Grimke, J.
The question presented for consideration is, are the sureties liable when the bond has not been signed or sealed by the principal obligor? The principal is dead, so that no objection is made to the form of the action; although the bond is joint and several, the defense is, that-the instrument is not a valid one.
In 5 Com. Dig. 148, tit. Officer, it is laid down, “ that no bond or writing may be exacted from the subject to the king or other person, to do that which by law'he was bound to do to the king, and such bond will be void, and the defendant may plead duress.’ And this rigorous principle has been the foundation of all the reasoning which has been employed to show that bonds given by public officers, which are not in conformity.with the provisions of tbo law, are void. At that early day the distinction does not seem to have been well established between statutory bonds and bonds which the party voluntarily consented to execute. This has been left to the more liberal spirit of modern times, which, acting upon society in all its various ramifications, has introduced itself into the structure of all our laws, and into the mode in which justice is administered. The distinction can not be called a merely curious and artificial one, since it has the same root and foundation *wbich the laws themselves have. It may [M'8 more truly bo called an enlightened distinction, since at the same time that it stands upon certain fixed principles, it endeavors to do violence to the rights of no one, by ascertaining in the most sensible manner the real intention of the parties to a contract.
It may be laid down as a general fact, that in the earlier stages of jurisprudence, its principles and the forms in which they are announced, are the most narrow and restricted possible, and that in its further progress, and when it has arrived at maturity, the rules which it adopts are combined with a greater degree of good sense. This results from the nature of the human mind, which, in the absence of a long and extensive experience, is obliged to take shelter under a sot of maxims which' are the most general and technical, and the least flexible in their application. Thus, notwithstanding the rigorous rule which I have referred to in Comyn, it is impossible not to know that a vast body of author *449 ities have grown up in modern times, and particularly in our own country, which have regarded this question in a totally different light from that in which he viewed it, and that the courts, without disregarding, but rather for the sake of preserving the fundamental principles of justice, have not in one or two instances, but in a great multitude of cases, felt themselves bound to give a most liberal construction to the bonds of public officers, even where they have been taken in pursuance of a public statute, but are not in conformity with its provisions. Some of the earlier American cases seem to vibrate between the strict rule which was formerly adopted, and the more liberal interpretation which is now applied to these contracts. For in the late adjudications, and especially in the Supreme Court of the United States, where this subject has been repeatedly and deeply considered, the distinction between a strictly statutory bond and a bond good at common law, has been firmly established. The cases of United States v. Brown, 5 Pet. 373; United States v. Tingey, 5 Pet. 115; United States v. Bradley, 10 Pet. 359; and United States v. Linn, 15 Pet. 290, demonstrate this. I confess I am not one of those who believe that the 449] *oldest cases are for that very reason entitled to higher consideration than later ones. The modern cases are necessarily the result of a greater amo unt of human experience, and would therefore seem to challenge a greater degree of respect.
In the case of the Postmaster General v. Early, 12 Wheat. 136, the suit was upon a bond given to the postmaster-general by the defendant, his deputy. The defendants pleaded and proved that their contract was not one authorized by any law of the United States. The bond, however, was sustained upon the soundest principles of reasoning. And yet the doctrine of Comyn is, that it is absolutely unlawful to take such a bond. The passage which I have cited from that author is also supported by Lord Coke in his 3 Inst. 149, with the exception of the last words, “ and the defendant may plead duress.” The true inquiry, undoubtedly, in all these cases is, has duress been practiced in obtaining the'bond? If it has, the bond should be annulled; but if it has not, if the contract has been voluntarily entered into, every principle of reason and of justice declares that it should be sustained. This is the doctrine which the courts may be considered as having fairly settled down upon as the most likely to secure the rights of the parties and to prevent fraud. Comyn says that the def'end- *450 ant may plead duress to a bond which has not been authorized by the legislature. But the law considers the question of duress as not necessarily involved in the taking of the bond, but as entirely independent of it, and refuses to annul such a bond, where it has been freely and voluntarily entered into. There are some cases where a statute, after prescribing the form in which a bond shall be taken, proceeds to declare that if not taken in that manner it shall be void. In the case of Alleghany County v. Van Campen, 3 Wend. 48, the court, in sustaining a suit upon a county treasurer’s bond, which was not in the form prescribed, remark that it is not like the case of sheriffs’ bonds, which the act had declared to be void unless taken in the mode directed. The statute under which the bond in this instance was taken, provides that the county treasurer, previous to his entering upon the office, shall give *bond with four or more freehold sureties, etc.; but in [450 the statute which regulates appeals to the Supreme Court, the language used with regard to the appeal bond is substantially the same, and yet it has been repeatedly held that such bonds are good, although they are only executed by the securities ; and the authorities to the same point are very numerous in England under their statutes prescribing bonds upon taking writs of error. 8 East, 298; 2 Bos. & Pul. 443. In the last case the court say they may, without doing violence to the statute, construe the words, with sureties, to mean by sureties. But the statute under which this bond was taken provides that in case of default, suit should be instituted against the treasurer and his sureties, from which it is ai’gued that the statute contemplates an execution by the principal as well as his sureties. I admit that it is the duty of the treasurer to execute the bond, and that the statute even supposes that he will do so. But I deny the proposition, that if it is not done the bond will be therefore void. The bond may be procured ; may, in the words of the act, be given by the principal, although he did not sign or seal it, nor does the statute declare that the suit to be instituted against him shall be on the bond. It might be argued with equal plausibility that these words, “on the bond,” wete carefully omitted, in order to guard against the conclusion that because an execution by the principal was proper, therefore it was necessary. The responsibility of the treasurer himself is equally fixed, in the event of a defalcation, whether he executed the instrument or not. And this is an answer to the reasoning *451 which is employed to show that the bond, in its present state, is an incomplete one. The completeness of the bond, stricti juris, depends simply upon the fact whether it was given by him. And that it was thus given, the indorsement on the back of the bond, on the very day on which the term of office commenced, on the very day when the bond should be given, of the oath of office by the principal, affords, in the absence of any countervailing testimony, the strongest possible presumption.
Great reliance is placed upon the fact, that if the instrument 451] *is not executed by the principal it will affect the remedy over against him by the securities. There would be great force in this argument if the remedy were destroyed; but it is not; the force and the extent of this liability to them are unimpaired. Whether they could use the bond, per se, as evidence of his liability, presents a question merely of convenience in the use of the right, but does not affect the right itself any more than would the loss or destruction of the bond. And a further answer to this argument is, that the bond being found in the hands of the legal depositary, the auditor, the presumption in the absence of any testimony to contx’adict it, is very strong that the sureties dispensed with, or which, as to its legal effect, is the same thing, that they were careless about the fact whether it was signed by the principal or not.
There is one case which has been recently decided by the Supremo Ooux't of the United States, which I can not refrain from noticing. It is the United States v. Linxx and others, 15 Pet. 290. The instrument on which the suit was brought, was a writing not sealed by either the principal or his sureties, and it was held that, although it was not a bond, it was a good contract between the parties. It is contended by the counsel for the defendant, that in that case the act under which the suit was brought, does not require bond, but merely that security shall be given. But an examination shows that he is mistaken. The act under which the instrument was taken (3 Story’s Stat. 1780) directs that the receiver shall give secuxdty in the same manner as was provided by the general act in force; and this act (1 Story’s Stat. 786) expressly directed that receivers should give bond with approved security. The term security applies to the sureties, and not to the nature of the instrument, which is absolutely required to be under seal; and yet the court held that this writing having been *452 voluntarily entered into, upon good consideration, was a binding contract upon all the parties. It is unnecessary to do more than to refer briefly to the case. It closes a series of adjudications upon the subject of official bonds, which have been more distinguished *for care and accurate research, than all others put [452 together.
I shall go into no further examination of the cases. There are a number of others which might be referred to in support of the conclusion to which we have arrived, that this is not an imperfect bond, that it is a good statutory bond, and that if it were not, it would be a good bond at common law.