Brinkerhqee, J.
The questions which the ease now presents, arise upon the sufficiency of the answer — the averments' of which, so far as the same are well pleaded, the demurrer admits to be true. Seven causes of demurrer are assigned. The first four of them consist solely of an alleged want of definiteness and certainty, in the averments of matters of fact contained in the answer. Now, if the allegations of the answer were “ so indefinite and uncertain that the precise nature of the defense” was “not apparent,” the remedy is by motion to the court to “ require the pleading to be made definite and certain by amendment,” according to the provisions of the 118th section of the code of civil procedure. The indefiniteness and uncertainty of a pleading can not be remedied, or taken advantage of, by demurrer. Trustees, etc. v. Odlin, 8 Ohio St. Rep. 293; Lewis v. Coulter, 10 Ohio St. Rep. 451. Considering, however, the relations of the parties in this case, and that the facts alleged generally in the answer by way of defense to the action are, in their particulars, peculiarly within the knowledge of the plaintiff, we think that the same stringent rules, in respect to definiteness and certainty of allegation, ought not to be applied to the now defendants as there might properly be, if the minute facts generally stated by them in their answer were, from the nature of the case, as well known to them as they are to the *209 plaintiff;' and we are, therefore, of opinion that even if a motion had been made for that purpose, the courts below would hardly have been required to compel the defendants to make the allegations of their answer more definite and certain.
The fifth cause of demurrer assigned seems to be intended .to deny that the answer makes out a case of usury against the bank.
The third section of the act of March 19,1850, “ to restrain banks from taking usury” (2 Curwen’s St. 1524), provides that “ it shall not be lawful for any banking institution in this state to charge, reserve, receive, or take more than six per centum in advance on the discount or purchase of any note, bill of exchange, or evidence of debt, payable at any place within the State of Ohio,” etc. And the fifth section of the same act provides, that “the discount, or purchase, by any banking institution in this state, of any note or bill of exchange on time, or other evidence of debt on time, payable at a place without the state, when the officer or agent of such bank knows, or has reason to believe, that the parties to such paper will not be prepared, or do not intend to pay the same at the place of payment, or when any device is resorted to in order to secure to said bank a greater profit than it would realize from the discount or purchase of such paper if made payable at its own counter, shall be deemed and held usurious and unlawful, within the meaning of this act.”
TV e think the averments of the answer make out a plain case of usury under these sections of the statute; and one which, avoids the paper in its hands tainted with the usury, and any mortgage given to secure it; first, because such usurious contracts are expressly prohibited by law; and second, because the bank had no corporate power to make them. Bank of Chillicothe v. Swayne, 8 Ohio Rep. 257. And by the second section of the act above referred to, any money paid to a bank on such a contract may be recovered back by the payor, and, in case of his neglect to sue for it, by the prosecuting attorney of the proper county, for the use of schools.
If a per centum “ charged as exchange, or any part of it, was intended as a cover for usurious interest, the form in *210 which it was done, and the name under which it was taken, will not protect the bill from the consequences of usurious agreements ; and if the fact be established, it must be dealt with in the same manner as if the usury was expressly contracted for in the bill itself.” Andrews v. Pond, 18 Peters R. 65. “ The question in such case is, not what did the parties call it, but what do the facts and circumstances require the court to call it?” And “ collateral securities taken on a contract void for usury, are also void in the hands of the usurer.” Corcoran & Riggs v. Powers et al., 6 Ohio St. Rep. 19.
The sixth cause of demurrer assigned, denies the right and legal capacity of the defendants, who have filed the answer here demurred to, to interpose the defense of usury against the mortgage.
It is true, that the assignee of an equity of redemption, eo nomine, can not interpose the defense of usury against the mortgagee; because, having purchased the equity of redemption, and nothing more, he is presumed to have purchased, subject to the mortgage, and, by his contract with the mortgagor, to have assumed to discharge it; that being a contract which the mortgagor has a right to make, for he might waive the usury; and, under this presumption, when the purchaser of the mere equity of redemption has paid its price, and also discharged the mortgage, he has paid no more than the agreed price and value of the land, which includes both the amount represented by the mortgage and the price of the equity of redemption. But, against an assignee of the land mortgaged, as contradistinguished from an assignee of the mere equity of redemption, eo nomine, no such presumption arises; and he ■may set up the defense of usury against the mortgage when it is sought to be enforced. On these points the authorities are full and conclusive. Morris v. Floyd, 5 Barbour S. C. R. 130; Brooks v. Avery, 4 Comstock, 225. And the same rule applies not only in favor of purchasers proper, but in favor of assignees for the benefit of creditors. Beach v. Fulton Bank, 3 Wend. 573; Pearsall v. Kingsland, 3 Edwards Ch. R. 195. And not only assignees, but the judgment creditors, of the mortgagor, having a lien on the land mortgaged, may set up *211 the defense of usury against the mortgage; and this though the mortgagor suffers a decree to be taken against him pro oonfesso. Post v. Dart, 8 Paige Ch. R. 639.
In the case before us, the defendants, who answer and set up the usury, are judgment creditors; but, as their judgments were obtained subsequent to the execution of the conveyance in trust for the benefit of creditors, there was no title remaining in the mortgagor on which a judgment lien could attach; and, therefore, if these defendants have a right to set up the defense of usury, it is in virtue of their being creditors simply, and beneficiaries under the deed of trust.
And we think they have such right. That the trustees under the deed of trust might set up this defense is clear. But they are mere trustees. They have 'themselves personally no interest in this controversy. The real and substantial interests involved are in the cestues que trust whom they are entitled to represent, and to whose benefit the defense, if made by the trustees, must enure. But the trustees in this case have failed to answer, and have thrown the. burden of the defense upon the creditors whom they represent. We can see no reason why those creditors should not be permitted directly to make any defense which the trustees might make for their benefit. Section thirty-five of the code of civil procedure provides, that “ any person may be made a defendant, who has or claims an interest in the controversy, adverse to the plaintiff.” These creditors have an interest in the controversy adverse to the plaintiff; they are, therefore, proper parties defendant; and the supposition that they are made parties defendant as an idle ceremony merely, and that being such parties, they may not avail themselves directly of a defense which would be available for their benefit if made indirectly through their trustees, seems to us to be wholly inadmissible.
The seventh and last cause of demurrer assigned, is, that the “ defendants are misjoined in their answer.” ■ On this point it is sufficient to say, that we know of no limit to the right of proper parties defendant to join in an answer, the averments of which they are able and willing to verify in accordance with the requirements of the code of civil proced *212 ure. And it may be proper to add, that these creditors of Bell are not precluded from making the defense of usury by force of the decree previously taken by consent of Bell against him; because if his consent to a decree against him could, under any circumstances, have such an effect, their rights are expressly saved by the terms of the decree.
This seems to dispose of the causes of demurrer assigned.
But, it is contended in argument that the giving of this mortgage by Bell, subsequent to the date of the drafts it was made to secure, and after one of them had matured and remained unpaid, was a setting aside and appropriation-of the land covered by the mortgage as a fund for the payment of these drafts, and so a waiver of the usury.
It seems to us that the mere fact of giving the mortgage after the maturity and default in the payment of one of the drafts, does not alone warrant the conclusion of a waiver of the usury, and, that the case is not different from what it would have been, had the execution of the drafts and of the mortgage been simultaneous acts. No case is cited where such a conclusion is drawn from such premises; and no waiver of the usury prior to the making of the trust deed is alleged in the petition or admitted in the answer.
It is furthermore argued by the plaintiff, that, as one of the drafts had matured and remained unpaid at the time of the making of the mortgage, the condition of the mortgage was broken as soon as made, that the estate of the mortgagee thereupon became at once absolute, leaving nothing but a bare equity of redemption in the mortgagor to pass to the assignees, under the deed of trusts; that neither the mortgagor nor those claiming under him could be permitted to redeem without doing equity by offering to pay the amount due exclusive of the usury.
To this it may be replied:
1. The cases already above cited show that where the mortgagor by the terms of his deed conveys the land, and not the equity of redemption merely, his assignee may set up usury in defense against the mortgage, although the mortgagor at *213 the time of his conveyance, had in law but a bare equity of redemption.
2. Although formerly a party plaintiff in equity seeking affirmative relief against a usurious contract, would have been denied relief except on the condition of payment or tender of the sum due in equity, yet a party defendant and acting only on the defensive, could always setup the defense of usury against a party seeking, as the plaintiff here does, the aid of a court of equity to enforce a. contract tainted with usury, without any such condition. Nor can the fact that the condition of the mortgage was broken, and that the estate of the mortgagee had become absolute at law, prior to the making of the deed of trust by the mortgagor, have any significance here; for, in a court of equity, at least until after entry or foreclosure, a mortgage, whether before or after condition broken, is regarded as a mere security for the performance of its condition.
Demurrer to answer overruled, and cause remanded to district court for further proceedings.
Peck, C.J., and Scott, Ranney and Wilder, JJ., concurred.