WATSON STEWART, *et al.*, v. J. M. BALDERSTON, *et al.*

1. ACTIONS EX DELICTO; *Assignment; Party Plaintiff.* A claim for money tortiously obtained from the claimant, may be assigned to a third person so as to give the assignee a right to recover the same in his own name.

2. PLEADING; *Separate Facts, Constituting Separate Causes of Action, to be Separately Stated.* A petition is bad which classifies and groups together the principal facts constituting 670 separate and distinct causes of action, and alleges such facts in general terms, (670 separate and distinct facts being stated in one general allegation,) in one general heading to said petition, and does not state the facts constituting each cause of action in a separate count, but simply refers in each count, to the facts as stated in said general heading. Such a petition does not nor does any count thereof state facts sufficient, *well pleaded,* to constitute a cause of action.

3. MOTION, *to Make Definite and Certain.* A motion asking that the plaintiffs be required to make such petition definite and certain, by separately stating and numbering their several causes of action, should have been sustained.

4. DEMURRER; *Facts to be well Pleaded.* Where such a motion has been made to such a petition, and overruled, and then a demurrer filed thereto, no facts stated in the petition should be taken as true on the hearing of the demurrer, unless they were so well pleaded as not to be objectionable on the hearing of said motion.

5. ———— After such a motion has been made and overruled, and demurrers filed to the petition and to each count thereof, on the ground that the same did not state facts sufficient to constitute a cause of action, the demurrers should have been sustained, on the ground that neither the petition nor any count thereof did state facts sufficient, *well pleaded,* to constitute a cause of action.

*Error from Allen District Court.*

THE only questions in this case are questions of pleading and practice. *J. M. Balderston* and *L. W. Keplinger*, as plaintiffs, filed their petition against *Watson Stewart* and *D. B. Emmert*, as defendants, containing 670 separate paragraphs, and intending therein to state 670 separate causes of action. The preliminary general statement, and so much of the subsequent portions of the petition as is necessary to a proper understanding of the case, are as follows:

[CAPTION AND TITLE.] "The plaintiffs say that at the time of the performance of the acts hereinafter specified the defend-

ant Watson Stewart was the Receiver of the United States Land Office at Humboldt, Allen county, State of Kansas, and the defendant D. B. Emmert was the Receiver of Public Moneys at said office, and that the said defendants combined, conspired and confederated with each other, for the purpose of advancing their own interests, and defrauding purchasers of land subject to entry in said office, by demanding and receiving as legal fees from said purchasers, by color of their said respective offices, fees and moneys which the law did not authorize the defendants to charge, and which it did not require the said purchasers to pay. The plaintiffs further say that the defendants, since the 10th of April 1869, and during the time they were engaged in the performance of the duties of their said respective offices, by so combining, conspiring and confederating together, did, by color of their said offices, and through fraud practiced by them upon the purchasers of lands subject to entry in said offices, to-wit, upon the parties hereinafter named in this and the succeeding causes of action, in pursuance of said combination, confederation and conspiracy, demand and receive as legal fees from each of said parties, to-wit, the parties hereinafter named in this and the succeeding causes of action, fees and moneys which the law did not authorize the defendants to charge, and which it did not require the said parties to pay, to-wit, the sums hereinafter mentioned, in this and the succeeding causes of action, as being due from defendants to said parties respectively for money had and received. The plaintiffs say that said fees and moneys were demanded and received by the defendants from said parties while said parties were in said office purchasing lands subject to entry therein, to-wit, the lands hereinafter mentioned in this and the succeeding causes of action, as having been purchased by said parties respectively. The plaintiffs further say that each of said parties last mentioned, to-wit, the parties hereinafter named in this and the succeeding causes of action, afterwards duly assigned, transferred and set over to the plaintiffs all claims and demands against the defendants for said moneys so demanded and received, to-wit, the sums hereinafter mentioned in this and the succeeding causes of action, as being due from the defendants jointly to said parties respectively for money had and received, and that the plaintiffs presented said claims to the defendants and duly demanded payment thereof, on the 20th of August, 1871.

"And the plaintiffs say that for money had and received as aforesaid, $7 was due from the defendants jointly to Henry

Surig, who purchased the N.E.¼ of section 4, T. 29 south, of R. 16 east, and duly assigned his claim for said sum to the plaintiffs, as aforesaid, which sum is due the plaintiffs from the defendants.

"2d. That for money had and received as aforesaid, $6 was due from the defendants jointly to Obadiah Bently, who purchased the S.W.¼ of Sec. 33, T. 29, R. 16, and duly assigned his claim for said sum to the plaintiffs as aforesaid, which sum is due the plaintiffs from the defendants." [Here follow 668 paragraphs, numbered from "3d" to "670," varying from number "2d" only, in the names of purchasers, description of lands, and amount of money claimed.]

"Wherefore the plaintiffs claim judgment against the said defendants for all of said sums, amounting to the sum of $4,125, together with the interest thereon from the 20th of August, 1871."

To this petition the defendants below interposed two motions, and two demurrers, all of which were overruled, and defendants excepted. Final judgment was given for the plaintiffs, at the November Term 1871, and the defendants bring the case here for review.

*Ruggles & Plumb*, and *T. L. Byrne*, for plaintiffs in error:

1. The said district court erred in overruling the motion to order plaintiffs below to make their petition definite and certain by separately stating and numbering their said causes of action so as to permit a distinct issue to be raised on each material fact constituting each cause of action. While pleadings may be drawn in certain subdivisions for convenience sake, yet these subdivisions are not counts in law; and each of the subdivisions in the petition here contains an attempted statement of the cause of action arising out of contract, and also a cause of action arising out of tort, which should be separated, so that the petition, and also each count thereof stating more than one cause of action, are bad for duplicity, in that no count of said petition separates the distinctive grounds of tort or contract, or states whether the respective causes, as gathered from each subdivision, were either tort or contract, or both com-

bined.  The various causes of action must be separated.  We cannot see that the pleading in question comes within § 83 of the code.  And see, code, § 88; 23 Wendell, 35.

It may be claimed that under the rule in *Langworthy v. Knapp*, 4 Abb. Pr., 115, the whole of the petition can be considered as a single statement of plaintiffs' whole cause of action.  But that rule cannot hold in this case, for in that construction of this case there are two grounds or causes of action attempted to be set up in the first head, or as they style it, first cause of action, and this is repeated under that rule 669 times thereafter; whereas, if we treat it as all one statement then the two causes are intermingled in the first head, and then repeated by reference back.  We claim that the heads are not causes of action, but that in this case they should state whether they claim on one legal cause or the other, and so state and number each cause separately.  Code, §§ 87, 88; 2 Till. & Shear. Pr., art. 3; 5 Kas., 558; Stephen on Pl., 30, 266; 1 Chitty's Pl., 416; Gould's Pl., ch. 4, §§ 79, 80, 86; 12 Wend., 249.

2. The proper method to reach the question is by motion. 6 How. Pr., 299, 308; 8 How. Pr., 242; 9 How. Pr., 378; 11 Ind., 280.

We do not lose sight of the fact that under the code, several causes of action may be joined in the same petition, where such causes of action grow out of the same transaction.  But these are cases where the causes *are several*, (not numerically several,) where in law the distinctive causes should and ought of right to be severed in order to avoid duplicity in the statement of the cause.  The code does not abrogate the well-known rule of separately stating each distinctive cause, but forms the rule into positive law, and makes it more obligatory upon the pleader to conform to the rule because it is law.  And in addition to the rule of separate statement of a cause of action, the code provides that each separate cause or causes must be separately numbered.  Code, § 88; 3 Kas., 373; 8 Ohio St., 216; 16 Ohio St., 91; 1 Iowa, 263. If it be a tort for which we have to answer, then clearly

there can be but one cause, viz., the tort, and we are entitled to a severance of that cause from the remaining facts. 16 Iowa, 301.

3. There is error of said court in overruling the motion asking the said district court to order the plaintiffs to make their said petition more definite and certain by setting forth their several causes of action distinctly and methodically, so as to permit a distinct issue to be raised on each material fact constituting each separate cause of action. This assignment is closely allied to the first, with this distinction: In the first we say practically that if the petition, or the various heads into which it is divided, attempts or intends to set forth or embodies more than one distinct cause of action, plaintiffs must separately state them that we may defend, and if there be more than one cause, each should be stated for every proper purpose of apprising us of what we should defend, and for convenience of all parties and of the court, they must be numbered. In this we go further, and practically say that we find that the intention is to put us on the defense for two causes in the same petition. This, under the code, we recognize your right to do, but you must set forth separately, distinctly and methodically the matters you attempt to charge, and you cannot doubly charge us in one count. You must not leave us to guess at what you want. You must divest your pleadings of anything likely to confuse. There must be, after you have separately stated and numbered your causes, a clear, well-defined and unequivocal statement of the matter of which you would have us stand charged. Code, subdiv. 2 of § 87, and § 88. In order to make the defendants below liable, *jointly*, as they were sued, the plaintiffs must rely on the *conspiracy* and *fraud* of Stewart and Emmert, and therefore the causes of action attempted to be set out in the petition must have arisen if at all, out of the tort of the defendants below, *jointly*, and could not be combined with an action for money had and received. For this reason the motion to compel the plaintiffs to separately state and number their several causes of action, so as to show whether they were

founded on contract or arose in tort, ought to have been sustained. It is as necessary, under the code, to maintain the distinction between actions arising out of tort, as those growing out of contract. 3 Nevada, 194; 6 Blackf., 158; 50 Barb., 73.

4. The allegation of combination and conspiracy, etc., on the part of Stewart and Emmert, is of itself a cause of action, and should be stated separately, and in the same manner as any other allegation of fact; and the general allegation of combination, conspiracy, etc., is of itself bad. 1 Ohio St., 478. In the case at bar the gravamen of the action seems to lie in the tort of "combining, conspiring and confederating with each other for the purpose of advancing their own interests," and also in the tort of so conspiring "for the purpose of defrauding purchasers of land subject to entry in said office by demanding and receiving as legal fees from said purchasers by color of their said respective offices fees and moneys which the law did not authorize the defendants to charge, and which did not require the said purchasers to pay." These torts are not alleged to be committed against the plaintiffs below, but upon third parties, who are not parties to the record. Such torts are not the proper subject of assignment, and cannot give the plaintiffs a right of recovery. And if upon a tort a party can recover as for money had and received, a new era will not only dawn, but break into open and shining day upon our jurisprudence.

5. The court below erred in overruling the demurrer to the first cause of action attempted to be set out in the petition. If the first count or cause of action shows anything, it shows that the cause of action attempted to be therein stated against the defendants below, jointly, must have arisen from the *conspiracy* and *fraud* of said defendants, or, in other words, from their tort. It being a tort, it was not assignable. Code, § 26; 13 N. Y., 322; 11 How. Pr., 97; 2 Story's Eq., § 1040*g;* 12 Wend., 297; 18 Barb., 500. The action, if maintainable at all, ought to have been brought in the name of each assignor. But *the facts* constituting the alleged fraud and

conspiracy are not stated,· but *conclusions* only. Such averment is bad on demurrer. 1 Ohio St., 475, 505.

6. The court erred in overruling the demurrer of the defendants below to the whole of the petition. There is not a word in the petition anywhere that shows that these payments were made by the assignors as a condition precedent to their right to enter the land; nor is there a word in said petition showing that the defendants below demanded or exacted the payment from the assignors of the fees alleged to be illegal, before the officers of the land office would permit them to enter the land. The payment, then, so far as any allegation contained in the petition is concerned, must be· deemed to have been a voluntary payment on the part of the· assignors. A payment made with a full knowledge of all the facts is a voluntary payment, unless there was an immediate and urgent necessity therefor, or unless made to release· person or property from detention, or unless made to prevent an immediate seizure. of person or property. *Wabaunsee·* *Co. v. Walker*, 8 Kas., 43.

7. But one question remains to be considered: Is the· action of the court below in overruling the demurrers to the· petition, and the motions which preceded them, properly reviewable by this court at this time? That they are, we· suppose is settled by our code and the decision of this court. Code, § 542, 2d and 3d clauses; 8 Kas., 565; 5 Kas., 233, 237.

*Balderston & Keplinger*, defendants in error, for themselves:

1. The court below did not err in overruling the motion to require defendants in error to make their petition more definite and certain by separately stating and numbering their several pretended causes of action. The most casual examination will show that they have separately stated ·and numbered what they consider their several· causes of action. The only question raised by this motion is, as to whether the reference from the first to the succeeding counts, and from the succeeding counts back to the first, is in violation of §§ 87 and 88 of the code. We say that our petition complies

10—10 KAS.

literally with those sections which require that each count shall contain "a statement of the facts constituting a cause of action in ordinary and concise language," and that "each cause of action shall be separately stated and numbered." If the words of reference in each count were stricken out or treated as surplusage, each count would still contain all the material facts necessary to constitute a cause of action, and each would be stated separately. The only objection that could be made in that case would be a motion calling for definiteness and certainty. This motion we anticipated by stating all matters pertaining to definiteness and certainty in the first count, and referring to them in the subsequent counts. We referred back, not to supply any material averment necessary to constitute a cause of action, but solely for purposes of definiteness and certainty. This method is approved by all the authorities, both prior to and since the adoption of the code. 1 Chitty, 413; 2 Hill, 282; 1 Denio, 414; 7 Wend., 182; 20 Johns., 344; 3 Cow., 96; 3 Wend., 205; 15 N. H., 97. We refer especially to 2 West Va., 377; 6 Ala., 436; 8 Ala., to show that a count which is bad on demurrer may be referred to. To the same effect are all the code authorities: 42 Barb., 404; 4 Bos., 391; 10 Abb., 245; 3 E. D. Smith, 679; 1 Estee Pl. & Pr., 210, 531, 542; Swan Pl. & Pr., 284; Nash, 60; 2 Tillinghast, 155.

2. The court did not err in overruling the motion to require us to make our petition more definite and certain. Each count in our petition contains a separate statement of all the material facts necessary to constitute a cause of action, and each count is numbered. If defendants below desired definiteness and certainty, they might have found it in our first count to which we expressly referred them in each count, and our right to do so is recognized, if not distinctly asserted in the authorities cited above.

3. There was no error in overruling the motion requiring us to make our petition more definite and certain by stating more definitely whether the causes of action stated the petition arose in tort or contract. The only clause in the

code upon which this motion can be based is that which allows the court in certain cases to require a pleading to be made more definite and certain. Section 87 of the code shows that this pleading which the court can require to be made more definite and certain, consists of a "statement of facts." All they can require is that we state the facts upon which we rely as our cause of action, with definiteness and certainty. If after we have done this it still remains uncertain whether our action is based upon tort or contract, it may be the misfortune of the plaintiffs in error, but it certainly is not our fault, and we deny their right to compel us to remove that uncertainty, either by the omission of facts or by the introduction of fictions; yet that is precisely what we would be compelled to do, should their motion be sustained.

4. The plaintiffs in error charge our petition with duplicity, though we are unable to see under which of their motions that question can properly be raised, or that it can be raised under either of them. To show that the allegations of fraud, combination and conspiracy do not necessarily constitute distinct causes of action in a petition: 3 Allen 551; 28 Conn., 74; 2 Gray, 127; 12 Vt., 519; 18 Cal., 85; 7 Hill, 179. We call special attention to *Herron v. Hughes*, 25 Cal., 560; *Raymond v. Sturges*, 23 Conn., 145; *Byxbie v. Wood*, 24 N. Y. 607.

5. The various points raised by the demurrers all turn upon the questions as to whether the payment of the fees mentioned in the petition was voluntary, and whether the claims for said fees were capable of passing by assignment. The plaintiffs in error take the position that these claims arose from tort, and were therefore not assignable, and cite § 26 of the code to sustain them. We reply in the language of the court in *Butler v. N. Y. & Erie Rld. Co.*, 22 Barb., 110: "This amendment [referring to the latter clause of said section] has been supposed by some as intended to restrict this right [of assignment,] and to establish the general principle that nothing but a cause of action growing out of contract could be assigned, so as to give the assignee such an interest as would enable him

to enforce his demand by a civil action. I do not see how such a construction can be given to this amendment. It is true it does not authorize the assignment of a thing in action not arising out of contract, nor does it forbid such an assignment. The right rests upon precisely the same footing as it did before, and the assignee takes precisely the same interest in the assignment of every species of demand, either at law or in equity, as he did before the code." Not only do we claim that the code has not contracted the list of things assignable, but we go further and say it has greatly extended that list. Assignability and transmissibility go hand in hand; and whatever extends the list of things transmissible, also extends the list of things assignable. 1 Peters 213. Sec. 420 of the code provides that in addition to the causes of action which survived at common law "actions for an inquiry to the person, or to real or personal estate, or for any deceit or fraud, shall also survive, and the action may be brought, notwithstanding the death of the person entitled or liable to the same."

6. The payment of these fees was procured by force. The amount of force necessary to render payments voluntary depends upon the relative situations of the parties at the time the demand was made. At the time these fees were demanded the settlers were dealing with the defendants below, not voluntarily, but because by law they were required to do so. Their property was already under duress, for the title to their homes was in the hands and to a great extent under the control of plaintiffs in error.

The payment of these fees was procured by the fraud of the plaintiffs in error. That the defendants below, "through fraud practiced by them upon the purchasers of said lands did demand its legal fees," is the language of the petition; and they were obtained by a breach of official duty. These facts are admitted by the demurrers and are sufficient. There is an unbroken current of authority, both in this country and in England, to the effect that illegal fees demanded and received *colore officii* cannot be considered as having been paid volun-

tarily, and may be recovered back. 3 Blatchford, 319; 7 Johns., 35; 4 Cow., 455; 2 Smith Lead. Cas., 464; 8 Bos., 155; 3 How., 103; 9 C. L., 319; 18 E. C. L.; 20 E. L. & E., 319.

The opinion of the court was delivered by

VALENTINE, J.: This action was brought in the district court by Balderston and Keplinger, as plaintiffs against Stewart and Emmert, as defendants. The plaintiffs below allege in their petition that the defendants were register and receiver of the Humboldt land office; that they illegally received $4,125 in various sums as fees from 670 different persons who purchased land at said land office, and that the said 670 persons have severally assigned their respective claims for said illegal fees to said plaintiffs, who now ask judgment in favor of themselves and against the said defendants for the whole amount of said claims. The petition contains, first, the title; second, a general heading, (which general heading is drawn more particularly for the first intended cause of action, but it is also drawn with the intention that it shall apply to all the supposed causes of action;) third, 670 separate paragraphs or sections numbered consecutive from 1 to 670; fourth, a general prayer for judgment for $4,125 and costs. The most of the facts stated in the petition are contained in the said general heading. Two different motions were made in writing by the defendants below to require the plaintiffs to make their petition more definite and certain, and to require them to separately state and number their several supposed causes of action. These motions were severally overruled by the court, and the rulings thereon were duly excepted to. Three different demurrers to the petition were then successively filed, containing between them the first, second, fourth, fifth and sixth statutory grounds for demurrer. (Civil code, § 89.) These demurrers were also severally overruled by the court below and the rulings thereon were also duly excepted to. The defendants then brought the case to this court on petition in error, and now ask to

have the judgment of the district court reversed because of said rulings.

The first question arising in the case is, whether a claim for money, tortiously obtained from the claimant, can be assigned to a third person so as to give the assignee a right to recover the same in his own name. We think it can. *Butler v. N. Y. & E. Rld.*, 22 Barb., 110, 112; *Foy v. Boston Rld.*, 24 Barb., 382; *Hall v. Robinson*, 2 N. Y., 293; *Hoyt v. Thompson*, 5 N. Y., 347; *McKee v. Judd*, 2 N. Y., 622, 625; *Zabriski v. Smith*, 13 N. Y., 322, 332; *Byxby v. Wood*, 24 N. Y., 607; *Hall v. Cin., Ham. and Dayton Rld.*, 1 Disney, 58; *Grant v. Ludlow*, 8 Ohio St., 1, 37; *Moore v. Massini*, 32 Cal., 590; *Jones v. Vanzant*, 4 McLean, 600; *North v. Turner*, 9 S. & R. 241, 248, et seq.; *Comegys v. Vasse*, 1 Peters, 193, 213; 2 Story Eq. Juris., § 1040. The taking of a man's money tortiously, as is charged in this case, is such a tort as affects and injures his personal estate by lessening the same; and at the same time it increases the value of the estate of the person who receives the money. At common law the party injured could in such a case waive the tort and sue as upon an implied contract. He could sue in assumpsit for money had and received. (1 Chitty Pl., 68.) In such a case the plaintiff alleged an indebtedness on the part of the defendant for the money had and received, and also a promise and undertaking on the part of the defendant to pay the money back. And when the plaintiff showed that the defendant had received the money, although it may have been tortiously or wrongfully received, yet the common law would imply a contract or agreement on the part of the defendant to pay it back, and would not permit him to show that in fact there had been no such contract or agreement. Under the statutes of this state a cause of action for money had and received, whether obtained tortiously or otherwise, as well as every other cause of action which affects injuriously the estate of the party injured, is such a cause of action as will survive after the death of the party injured to his legal representa-

*(margin note: 1. Actions arising ex delicto. Action by assignee.)*

tives. (Civil code, §§ 420, 421.) And according to many
of the authorities which we have already cited this is conclu-
sive proof that the cause of action is assignable. As long
ago as 1828 it was said in the case of *Comegys v. Vasse,*
1 Peters, 213, Mr. Justice Story delivering the opinion of the
court, that "In general, it may be affirmed, that mere per-
sonal torts, which die with the party, and do not survive to
his personal representatives, are not capable of passing by
assignment; and that vested rights, *ad rem* and *in re,* possi-
bilities coupled with an interest, and claims growing out of
and adhering to property, may pass by assignment." And
this doctrine has been generally followed in this country ever
since. It is now generally said that survivorship of a cause
of action, and assignment, go hand in hand. Also, in this
state, a cause of action for money had and received, although
the money may have been tortiously obtained, as it is a cause
of action on an implied contract, may be united or joined in
the same petition with other causes of action arising on con-
tract either express or implied. (Code, § 83.) And under
§ 26 of the code such a cause of action, as well as every other
cause of action, "must be prosecuted in the name of the real
party in interest," except in certain cases where it is "other-
wise provided." This is not one of the cases where it is
"otherwise provided." According to said § 26 every cause
of action which has been assigned must be prosecuted in the
name of the assignee. But said section does not operate "to
authorize the assignment of a thing in action, not arising out
of contract." But as we have already seen, the plaintiff has
a right in a case of this kind to claim that his cause of action
did arise out of an implied contract, and the defendant has
no right to claim that in fact it did not, or to deny that it
did arise out of contract. Upon the authorities then, and
our statutes, taken together, we think a cause of action for
money tortiously obtained is assignable, and that the assignee
may sue in his own name.

There are other questions raised in this case, the principal
of which are the following: First, Are the facts which are

stated in the petition well pleaded? Second, Must the facts which are stated in the petition be well pleaded in order that the petition may withstand the objections made thereto by the said motions and the said demurrers? Third, Are there sufficient facts stated in the petition well pleaded to constitute a cause of action? Fourth, Are there sufficient facts stated in each and every paragraph or section of the petition well pleaded to constitute a cause of action? Fifth, Are there sufficient facts stated in any one of said paragraphs or sections well pleaded to constitute a cause of action? We must answer all of these questions except the second in the negative, and the second must be answered in the affirmative. The said motions and demurrers should therefore have been sustained. The plaintiffs below undoubtedly intended to state 670 separate and distinct causes of action. They numbered these supposed causes of action consecutively from 1 to 670, but they did not state what these numbers were intended to represent, · whether they were intended to represent paragraphs of one cause of action, or whether they were intended to represent separate and distinct causes of action. And they did not state in any one of those supposed causes of action (except perhaps the first) all the facts which they intended should enter into and constitute a part of said supposed cause of action; but much the larger portion of the facts which they intended should enter into and constitute a part of each cause of action was stated in said general heading to the petition. Hence the said supposed causes of action were in no just sense separately stated as required by the code. In every case "The petition must contain a statement of the facts constituting the cause of action." (Code, § 87, subdiv. 2.) "And where the petition contains more than one cause of action each shall be separately stated and numbered." (Code, § 88.) Or in other words: each count in a petition should contain in and of itself a full and complete statement of all the facts (and no more) constituting the cause of action therein intended to be stated. In other words:

2. Pleadings; separate facts, constituting separate causes of action to be separately stated.

each count should be separate and distinct from every other count, and be complete within itself. This is the general rule. There are possibly some exceptions, one of which we shall hereafter discuss in this opinion. The proposition that each and every separate and distinct fact which enters into and assists in constituting either a cause of action or a defense must have at least one separate and distinct statement, has no exception in pleading. Facts cannot be classified and grouped together, and then alleged in the group, as has been done in this case. If the facts are single, if they are separate and distinct from each other, they must be alleged separately, and must be alleged in the counts to which they respectively belong. No two separate and distinct facts can be grouped together and stated in one allegation; much less can 670 separate and distinct facts be grouped together and stated in one allegation because they are similar, and because one general allegation can be framed which will cover all of them. But while it is necessary to state every fact at least once, we do not suppose it is necessary to state any fact more than once in any pleading. Probably it is not necessary to state any fact more than once in the whole case, or in all the pleadings. If such fact enters into and constitutes a part of several separate and distinct causes of action or defenses it may, after being once clearly stated in any count where it properly belongs, be referred to in any subsequent count, and by such reference be made a part of such subsequent cause of action or defense. This mode of pleading is an exception to the general rule. But such exception is founded in reason, and must be tolerated for the sake of brevity. No exception however can be tolerated that has not some strong reason in its favor. To illustrate the foregoing rule and the exception we would say: that if the 670 persons mentioned in the plaintiffs' petition were all present at the office of the defendants at one and the same time seeking to purchase their lands, and if the defendants then and there told them all together that they must each first pay said illegal fees or they could not have their lands, then it would do for the plaintiffs to state

such fact (as it would really be but one fact) once only in their petition, and then in each separate and subsequent count refer intelligibly to said fact and make it a part of such count. But if these 670 persons applied at different times and under different circumstances to enter their lands (as we must presume they did under the pleadings, and as the case is presented to us,) then a separate and distinct statement of each separate and distinct application, and the threats then and there made, must be made in the petition or the petition will be bad. In other words, it is not sufficient to state 670 separate and distinct facts (though similar) in the lump, but each must be stated separately. Every fact that requires separate evidence to prove it must be separately stated in the pleading. In the case we have supposed, if the threats that said 670 persons could not have their lands without first paying said illegal fees were all made at once, and to the whole 670 persons as they were congregated together at the office of the defendants, then evidence of such threats for any one of the causes of action would be evidence for every other cause of action, and once proving such threats would be sufficient for the whole 670 causes of action, and therefore one statement of the fact in the petition would be sufficient for all the causes of action if intelligibly referred to in every count which did not contain a full statement of such fact. But if the threats were made at 670 different times, and under different circumstances each time, and to each of the 670 persons separately, then evidence tending to prove one threat would be no evidence of another; and evidence tending to prove the threats for one cause of action would be no evidence for any other; and in such a case the threats in each case and for each cause of action would necessarily have to be stated separately in the petition, and proved separately on the trial; and each threat would necessarily have to be stated in the count to which it properly belonged, and could not properly be stated anywhere else. After the said general heading in the petition came the said 670 supposed causes of action. The following is the statement of the first supposed cause of action not including the said

general heading, and the other 669 supposed causes of action are in form precisely like the one we here give, to-wit: "And the plaintiffs say, that for money had and received as aforesaid $7 was due from the defendants jointly to Henry Surig, who purchased the N.E.¼ of sec. 4, T. 29 south, of R. 16 east, and duly assigned his claim to the plaintiffs as aforesaid, which sum is due the plaintiffs from the defendants." We suppose it will hardly be contended that this statement taken alone contains facts sufficient to constitute a cause of action. Can any one tell from the words, "that for money had and received as aforesaid," how the money was received? The reception of the money may have been legal and valid, and such as would not create a cause of action. By using the word "aforesaid" it renders the allegation incomplete, and it can mean nothing in and of itself. Even if it should be conceded that the allegation in the said general heading that the defendants were register and receiver of the Humboldt Land Office, is well pleaded, and still there is nothing to show without still further resorting to said general heading that this money was received by said defendants as officers, or that it was not their legal fees, or that it was not received for extra work done by them as individuals and not as officers, or that this money was not paid voluntarily and without any threats or coercion, and with a full knowledge of all the facts; or that it was not paid for the purpose of obtaining some illegal advantage over some other person, both the parties being *in pari delicto;* or that the money was not received in some other manner so that no cause of action would accrue. This allegation of itself amounts to nothing. Neither does the allegation that Surig "duly assigned his claim to the plaintiffs as aforesaid." How was that assignment as aforesaid made? There is nothing to show. And were the 670 assignments of claims one act, so that they could all be stated in one allegation, and then simply referred to in subsequent counts? Such in the nature of things could not be so. If this mode of pleading were correct, then the plaintiffs might have alleged in general terms in the said general heading in their petition that the

defendants received from each of said 670 persons seven dollars, (or some other sum large enough to cover the largest amount received from any one of said 670 persons,) and thereby saved themselves the trouble of even alleging in each separate count of their petition the amount received from the individual mentioned in that count.   In fact, if such were correct pleading the plaintiffs might by general allegations in the general heading to their petition so reduce the number of the allegations for each count that the simple name of any one of the said 670 individuals from whom the money was received ·would be sufficient to constitute a separate and distinct count, and the whole of such count.   In such a case the 3. Motion to first count in this case would read as follows: make definite and certain. "1.–Henry Surig."   We suppose that such a mode of pleading can ·hardly be tolerated.   And if not, then the defect or irregularity can certainly be reached by motion; and after motion made and overruled, by demurrer.   Both at common law and in chancery upon a demurrer to a pleading everything stated in the pleading was taken to be true that was well pleaded, and nothing was taken to be true that was not well pleaded. Comyn Dig., "_Pleader_," 26; 1 Chitty Pl., 662, (13 Am. ed.,) notes *i* and 1; Story's Eq. Pl., § 452; 2 Whittaker Pr., § 168.   But under our code-system of practice it would seem that the rule that nothing is to be taken as true unless well pleaded has been greatly modified.   It would now seem from the decisions, where no motion has been made to have the pleading made more definite and certain, or to have the several causes of action or grounds of defense separately stated and numbered, or to ·have the pleading corrected and made more formal in some other respect, that, on a demurrer to the pleading everything stated therein should be taken as true, and be considered by the court, whether well pleaded or not. Civil code, § 115; *Sattig v. Small*, 1 Kas., 177; *Western Mass. Ins. Co. v. Duffey*, 2 Kas., 347, 353; *Crowther v. Elliott*, 7 Kas., 235; *Park v. Tinkham*, 9 Kas., 615; *Prindle v. Caruthers*, 15 N. Y., 425; *Richard v. Edick*, 17 Barb., 261; *Hartford Tp. v. Bennett*, 10 Ohio

St., 441; *Lewis v. Colter*, 10 Ohio St., 451; *Stoutenberg v. Lybrand*, 13 Ohio St., 228; *Summers v. Parrish*, 10 Cal., 347. But when the proper motions have been made to require the adverse party to so amend his defective pleading as to make it definite, certain, correct and formal, thereby giving the adverse party notice wherein

4. Demurrer to petition. When facts must be well pleaded.

his pleading is defective, informal, or insufficient; and where the adverse party then refuses to amend his defective pleading, resists the motions to have it amended, and has the motions overruled by the court, the most rigid rule of the common law should prevail. No statement of fact in the pleading which the motions reached should then be taken as true, unless well pleaded; and if any such statement would bear different constructions the party demurring should be allowed to adopt any one of such constructions which he should choose. The old rule of the common law that "Everything should be taken the more strongly against the party pleading," although it can seldom have application under our code practice, should then prevail. After a party has received full notice that his pleading is defective in some particular, and has been asked to correct it, it is his fault if it still remains defective in such particular, and he is the one who should suffer on account of such defective pleading, and not the other party. In the present case there was scarcely a fact in the whole petition that was well pleaded. Nearly all the facts that were intended to constitute 670 different causes of action were grouped together, although separate and distinct, and were stated in very general terms in one general heading to the petition. Probably no defendant was ever before asked to answer to such a petition, and certainly no defendant should ever be asked to answer to such a petition.

The judgment of the court below is reversed, and cause remanded with instructions that further proceedings shall be had in accordance with this opinion.

All the Justices concurring.