Johnson, Chief Judge.
The action was to recover of nineteen defendants, jointly sued, a tract of four hundred and seventy acres of land, part of survey No. 3,749, in the Virginia Military District. The defense was joint °niy.
Upon the first trial, a verdict was rendered in favor of plaintiffs and against seven of defendants for one hundred and ninety acres, part of the four hundred and seventy acres, and in favor of all the defendants as to the residue of the premises. Judgment was rendered against the seven in plaintiffs’ favor, that they recover the one hundred and ninety acres, and in favor of all defendants as to the residue. The plaintiffs made no objection to the verdict, either as to form or substance, nor to the judgment thereon, in the court of common pleas. Error thereto was first assigned in the district court. The seven defendants, against whom judgment was rendered, demanded and were allowed a second trial. It was perfected, and at a subsequent term plaintiffs moved to set aside the order allowing the second trial, which motion was overruled, and exceptions noted.
1. It is claimed that as the defense was joint only, the first verdict and judgment should have been against all, and that plaintiffs were entitled to such judgment, non obstante.
Under section 371 of the civil code, where several defendants are jointly sued, even on a contract, judgment may, on final trial, be rendered for or against one or more of them. Lampkin v. Chisom, 10 Ohio St. 450 ; Roby v. Ramsberger, 27 Ohio St. 676; Aucker v. Adams et al., 23 Ohio St. 543; Hempy v. Ransom, ante, 312.
Again, as no exception was taken to this verdict and judgmeut, and as a second trial was taken, it was too late to assign, in the district court, this action of the lower court as error.
2. It is further claimed, that the court erred in overruling the motion to set aside the order allowing a second *400 trial. That one or more defendants, jointly sued with others, where judgment is rendered against them, and in favor of the others, may take a second trial, although they have all joined in the defense, is a logical deduction from the preceding proposition; that though all defend jointly, yet, upon final trial, judgment may be rendered against some and in favor of others, as the proof requires.
Where all defend jointly, and the verdict and judgment are, as in this case, in favor of some defendants and against others, it is claimed that the effect of a second trial, taken by those defendants against whom j udgment is rendered, is to open up the whole case for a second trial upon the original issues; and, therefore, it is said, the court should have granted this motion. If we admit the premises, the conclusion does not follow.
No ruling of the cóurt was had on this question. It was not asked to try the case the second time, as if the whole case was opened up, by taking the second trial, by offering evidence as to other defendants, or otherwise. For aught that appears, the court did try the case de novo. At any rate, the motion to set aside the order for a new trial, was not the proper one to test the effect of such order. That these seven defendants were entitled to a second trial is to us clear. What the effect of taking a second trial was upon the verdict and judgment in favor of the other defendants, is a different question. As no step was taken in the court below to have this question raised and decided, the motion made not being such, the court committed no error that can now be reached.
3. Did the court err in admitting, in behalf of defendants, in support of their title by possession, the tax-sale record, and in refusing to charge, and in charging, as set forth in the statement of facts ? That the description of the land sold was too vague and uncertain to convey a title, and that such tax sale was void, admits of no dispute. Lafferty v. Byers, 5 Ohio, 458; Lessee v. Emerick, 6 Ohio, 391; Massie's Heirs v. Long, 2 Ohio, 287; Douglass v. *401 Dangerfield, 10 Ohio, 152; Burchard v. Hubbard, 11 Ohio ; 816; Winkler v. Higgins, 9 Ohio St. 599.
The charge requested was, that where a party enters upon laud, without a deed, or other paper title, containing a specific description of the premises, by metes and bounds,, or without color of title, claiming to hold them adversely,, his possession only extends to that part of the tract actually' improved and occupied by Mm ; and that his entry, in such case, upon a part of the premises, did not give him adverse-possession to the uninclosed and unimproved woodland.
We think this charge was pertinent to the case made by the evidence, and should have been given. Defendants-were in possession, claiming title by twenty-one years occupancy, open, notorious, and adverse.
It is conceded, in argument, that defendants had no paper title with boundaries such as to give them the benefits of the doctrine of constructive possession; but it is insisted that this record, from the auditor’s books, was admissible,, under the second defense, to show that the purchase of the land at tax sale, and the payment of taxes for forty years, were acts in connection with actual possession, to show the character of that possession, and the claim of right to the land.
It is admitted that the description is too vague and indefinite to show the extent of the possession ; but it is said the paper was properly admitted “ as an act of the claimant, done in connection with the survey,” subsequently made by the holder of the tax certificate, “ and possession, under these acts,” and “ as tending to prove possession, and the extent of the possession, as well as the character of the possession.”
Counsel, in argument, stated the case thus: “ That in 1827, this tax sale was made to Burnham, and that he paid the taxes right along, and that prior to 1848 all of the tract had been sold for taxes, and that Burnham, and Huffman, and Wasson were the holders of it; that in 1848 they caused General Irwin, as county surveyer, to run the lands *402 off into lots, and mark the lines and corners carefully on the trees, and make a map of tbe land, which he gave to Burnham; that, in pursuance of this division, each took possession of hi? lot, and Burnham took possesson of this lot, and claims to have held it ever since. At the trial, among other acts of Burnham to establish his claims, and show the character of his possession, the defendants offered, in evidence, their record of tax sale. It was done,, pot to show title in defendants, but under the defense of statute of limitation (the second defense), as the record shows, and if it was admissible for any purpose, its admission was erroneous.”
In brief, the claim is, that although this paper title was void, and ineffectual by itself, to give character to the possession, or show the extent of the possession, yet it was' ■competent, in connection with the survey and subdivision of the whole tract, made by the holder and other holders of ■similar tax titles, to show the extent and character of possession. That is, although Burnham, under whom defendants claim, had never lived on the land, which was all wild .and uninclosed, and only had cleared and improved a small portion, yet he was constructively in possession, to the boundaries of an agreed division, subsequently made, of the survey, between himself and other holders of similar -tax title. It seems to us that the mere statement of this proposition carries with it its own refutation. The plaintiffs owned the fee. The second defense is the adverse possession for twenty-one years. Plaintiffs were entitled to recover, unless defendants could show adverse possession, open, notorious, and continuous for the required time. If they ■could show this, it was wholly immaterial whether they entered under color of title or not. Lessee of Paine v. Skinner, 8 Ohio, 167; Yetzer v. Thoman, 17 Ohio St. 130; McNeeley v. Langan, 22 Ohio St. 37.
It is the visible and adverse possession with an intent to possess that constitutes its adverse character, and not the remote motives or purposes of the occupant. French v. Pearce, 8 Conn. 439.
*403 As to the extent and character of an occupancy of unimproved land, there is a well-marked difference between an entry and possession by one with and one without color of title. The rule as to the former is thus stated:
“An entry into possession of a tract of land under a deed ■containing specific metes and bounds gives a constructive possession of the whole tract, if not in any adverse possession, although there may be no fence or inclosure round the ambit of the tract, and an actual residence only on a part of it.” Ellicott v. Pearl, 10 Peters, 412; Sanchez v. Gonzalez, 11 Martin (La.), 207; Jackson v. Smith, 13 Johns. 406; Jackson v. Warford, 7 Wend. 62 ; Proprietors v. Springer, 4 Mass. 416; Lee v. Polk Co., 21 How. (S. C.) 493; Clark v. Potter, 32 Ohio St. 49, 62.
The party who enters without color of title, and who relies on adverse possession only as a defense against a legal title, must show a substantial inclosure, an actual occupancy, a pedis possessio, which is definite, positive, and notorious, to countervail such legal title. Jackson v. Woodruff, 1 Cowen, 285 ; Jackson v. Shoemaker, 2 Johns. 234; Doe v. Campbell, 10 Johns. 477.
Conceding; for the purposes of this case, that this tax sale record of the auditor was of the same force as a deed or other instrument of conveyance, if it contained a description of any land, it remains to be determined what its effect was without such description as a foundation for the doctrine of constructive possession. It specifies no particular one hundred acres of the survey of six hundred acres. It purports to sell for non-payment of taxes one hundred acres of said survey as the property of Joseph Elippo, but as it appears by the patent that Flippo owned an undivided one-sixth of the whole survey as a ten ant "in common with the other patentees, no specific lands were sold. At most it was like a deed, without boundaries, or any landmark to enable a surveyor to find the land. Such ■a deed cau not lay the foundation for an available adverse possession beyond the actual improvement. It can not be relied on as giving color of title to land by metes and. *404 bounds. Angell on Lim., § 408; Jackson v. Woodruff, 1 Cowen, 276; Little v. Downing, 37 N. H. 355; Gudyer v. Barnes, 4 Heiskell (Term.), 570.
The ground upon which the doctrine of constructive possession is based is, that one in possession, claiming by metes and bounds under a paper title, and openly and notoriously exercising control and dominion on the land, is-presumed to be doing so to the extent of his claim. Where, however, his paper claim is void for want of any description of the land, or any thing to define its extent; his acts and dominion can create no such presumption. The occupancy must be such as to give notice to the real owner of the extent of the adverse claim. Hence it is that occupancy without a deed defining the land is only notice to the boundaries actually inclosed or improved. It is said, however, that while this is true, yet the court substantially so charged.
After refusing to charge as requested, that the entry under this tax record of part only of the land did not give defendants adverse possession of the uninclosed and unimproved woodland, the court did charge: “ That the possession, to constitute a defense under the statute of limitations, must be actual, exclusive, and notorious, with claim of title. Hut that it was not necessary that the party should live upon the land, or farm it, or inclose it, or fell or deaden the timber.”
The charge given was clearly erroneous when applied to' occupancy without color of title, and correct if defendants were to be regarded as in possession under a deed with metes and bounds.
The paper title in this case described no lands by metes and bounds, nor did it indicate in what part of the survey of six hundred acres, this particular one hundred acres was to be located. No presumption could therefore arise that the actual occupancy of part was adverse to the extent of any boundaries whatever. Nor could the holder of such void tax title himself survey off the quantity called for,. and then claim that the occupancy of and inclosure of a *405 part carried his adverse possession to the boundaries of his .own survey. As well might a mere intruder upon wild laud make a survey of the amount he wanted to appropriate to his own use, and then by an improvement and occupancy of a small part thereof, claim that his possession extended by construction to the boundaries of his ■own survey, and thus evade the well-established rule of pedis possessio in such cases.

Judgment reversed.