AT INDIANAPOLIS, NOVEMBER TERM, 1852, IN THE THIRTY-
SIXTH YEAR OF THE STATE, BUT HELD OVER ON
PETITIONS FOR REHEARING, WHICH
HAVE BEEN OVERRULED.

---

### ELLIS and Another *v.* THE STATE and Another.

It is competent for the legislature to make the state printer an officer.

The law of 1843 made the right to do the state printing and take the com-
pensation therefor, an office.

The office of state printer is one of trust and profit.

The sale of the office of state printer is prohibited by principles of public
policy.

The act of 1851, entitled "An act in relation to the pay of *Austin H.
Brown,* printer to the constitutional convention of *Indiana,*" does not
sanction the assignment of the office of state printer made by *Jacob P.
Chapman,* state printer, to *Ellis* and *Spann.*

The printing done for the constitutional convention of 1850, was not em-
braced in any contract, express or implied, between the state printer and
the legislature that elected him.

No contract could be implied, on the part of the legislature, with the state
printer, further than that he should execute the printing authorized by
a legislature acting under the same constitution with that which elected
him.

By public printing is meant that which is directly ordered by the legisla-
ture, or performed for the agents of the state government authorized to
procure it to be done.

Nov. Term,
1852.

Ellis
v.
The State.

The printing executed by *Austin H. Brown* for the constitutional convention of 1850, was not authorized by a legislature acting under the constitution of 1816, nor by any legislature; nor did any authorized agent of the legislature procure it to be done.

The printing done for the constitutional convention of 1850, was procured by the convention to be done on its own responsibility; and the subsequent payment for it by a legislature sitting under the authority of the constitution of 1851, was a voluntary and not an obligatory act; and the state was not rendered liable for damages to the state printer thereby.

*Friday,*
*November 26,*
*1852.*

APPEAL from the *Marion* Circuit Court.

Perkins, J.—Bill in chancery in the *Marion* Circuit Court, by *Ellis* and *Spann*, assignees of *Jacob P. Chapman*, state printer, to recover damages which, as such assignees, they alleged they had sustained by reason of the printing of the late constitutional convention having been withheld from them.

The bill charged that on the 3d day of *January*, 1850, *Jacob P. Chapman* was elected state printer, to serve for three years next after the 1st day of *August*, 1850; that he gave bond on the 5th day of *January*, 1850, as required by law; that on the 3d day of *May*, 1850, *Ellis* and *Spann* purchased from *Chapman* the right to do the public printing and receive the pay therefor, for which they paid him a considerable sum of money; that on the 16th day of *May*, 1850, *Chapman* made to them a power of attorney to receive the pay for said printing, and received from them a bond conditioned for its faithful execution; that the convention to amend the constitution of the state assembled at *Indianapolis* on the 7th day of *October*, 1850, and adjourned finally on the 13th day of *February*, 1851, and, during its session, ordered and procured *Austin H. Brown* to execute printing, consisting of the journal and debates of said convention, and other matters, costing in all, at legal prices, the sum of 6,110 dollars and 89 cents, and the net profit on which amounted to 2,976 dollars and 67 cents, being the sum claimed in this suit by *Ellis* and *Spann* as their measure of damages. The bill further alleged the readiness of *Chapman* and of *Ellis* and *Spann* to do said printing, and notice to the

convention of the fact. The bill set forth the act of the legislature of the 8th of *February*, 1851, authorizing the treasurer of state to pay *Brown* for said printing out of the state treasury, &c., but providing that said payment should not " operate against the claim of *Jacob P. Chapman*, the state printer, or his assignee or assignees, if any he or they have, against the state." The second section of said act enacts, " That *Erastus W. H. Ellis* and *John S. Spann*, the assignees of *Jacob P. Chapman*, the state printer of the State of *Indiana*, be and they are hereby authorized to bring suit against the State of *Indiana*, in the *Marion* Circuit Court, in accordance with the provisions of chapter 45 of the general laws of 1850, page 66, for such damages, if any, as they may have sustained in consequence of the printing of the constitutional convention being withheld from them."

*Chapman* was made a defendant and answered, confessing the bill.

The state answered, mainly confessing the facts of the bill, but denying the right of the plaintiffs to damages upon the facts.

The Court below decreed against the plaintiffs.

The counsel for the plaintiffs contend that this decree should be reversed and this suit sustained:

1st. Because the state printer is not an officer, and the business or function of the state printer is not an office, but rather an engagement with the state for the performance of service, which engagement is legally assignable. Or,

2d. If the state printer be an officer, and his duties be not generally assignable, still the state has recognized and sanctioned the assignment, in the present case, by the act authorizing this suit.

3d. That the printing done by *Brown* for the constitutional convention was embraced in the contract between the state printer and the legislature that elected him.

It was competent for the legislature to make the state printer an officer, and we think they have done so in this state. Art. 5, of chap. 4, of the R. S. 1843, p. 100, treats

"of the officers elected by the general assembly, and the tenure of their offices." It specifies:

"1st. The Secretary of State.·

"2d. The Treasurer of State.

"3d. The Auditor of State.

"4th. President Judges of the Circuit Courts.

"5th. Prosecuting Attorneys.

"6th. The State Librarian and State Printer."

Section 34 enacts that "the state printer shall hold his office for the term of three years, and until his successor is chosen and qualified;" and section 77, of the same chapter, provides that "every person chosen or appointed to any office of trust or profit under the authority of this state, is required, before entering on the duties of said office, to take an oath," &c. The state printer is also required to give bond for the faithful performance of his duties. The law, then, has made the right to do the state printing and take the compensation therefor, an office, and it is one of profit and trust. That it is one of profit, the institution of this suit sufficiently evidences. It is also one of trust. The printing for the term for which the state printer is elected amounts to a large sum of money, and creates the necessity for a large amount of materials. The state wants, therefore, honesty and judgment in the man intrusted with it; and she wants promptness, accuracy, and neatness, in the execution of the work. And it is with an eye to these things that the officer is chosen, and his personal superintendence is expected to be given to secure them. We may mention that in all the contracts in this state letting portions of the public works to the several contractors, a provision prohibiting the sub-letting at will of the contract, was inserted; and also one making the failure of the contractor to give his personal superintendence to the work a ground of forfeiture of the contract. The statutes of 5 and 6 Edw. 6 of *England*, against buying and selling offices, would prohibit the sale of that of state printer, and principles of public policy prohibit it here.

Nor do we think the act authorizing this suit has sanc-

tioned the assignment supposed to have been made in
this case.  The legislature have not assumed to deter-
mine anything in the premises, but have referred all the
questions arising in the cause, that of the assignment
among them, to the Courts for decision.

Nor, thirdly, do we think the printing done for the late
constitutional convention was embraced in any contract,
express or implied, between Mr. *Chapman*, as state prin-
ter, and the legislature that elected him.  We do not
mean to admit or deny that his election constituted a
contract for any amount of printing.  See *Gilbert* v. *The
Board of Commissioners*, &c., 8 Blackf. 81, and 3 Kent's
Comm., 6 ed., p. 454, n. (c).  At all events, no contract
could be implied on the part of the legislature by his
election, further than that he should execute the printing
authorized by a legislature acting under the same consti-
tution as was that which elected him.  The legislature
did not guarantee against a change of government; and
had the convention abrogated the office of state printer,
and provided that the public printing should thereafter
be let out to the lowest bidder, the then incumbent of that
place would have shared the fate of the other officers
whose terms were shortened, or offices abolished alto-
gether.

And by public printing, we may remark, we mean such
as is directly ordered by the legislature, or performed for
the agents of the government authorized to procure it to
be done.  The printing in question, executed by *Brown*,
was not authorized by a legislature acting under the old
constitution, nor by any legislature.  We have carefully
looked over the act of 1850, (L. of 1850, p. 29), providing
for the convention, and authorizing payment of certain
expenses which it might incur, and there is nowhere a
sentence in said act by which the officers under the old
constitution could be justified in paying for said printing,
nor by which said convention could order said printing at
the expense of the state.  It was not, therefore, either
authorized by the legislature directly, nor procured by
her authorized agent.

Nov. Term,
1852.

Ellis
v.
The State.

We are aware that a difference of opinion exists as to the powers of the late constitutional convention. By some it is regarded as having been a mere creature of the legislature of the old organization, called to perform a specific duty, viz., the amending and reforming of the old constitution. By others it is regarded as having been a body outside of, independent of, and over and above the old political organization; and in this latter light, we believe, it regarded itself. But it is immaterial to the decision of the case before us, in which of these lights it is viewed. If it was the mere agent of the old government for effecting its reformation, then it was limited in its powers by the letter of agency—the statute—under which it assembled; and that did not authorize it to procure from any source the printing in controversy. If it was a body independent of the old organization, then the former government had nothing to do with its printing bills, and they were to be provided for by a subsequent legislature.

We think the printing in relation to which this suit was instituted, was procured by the convention on its own responsibility, and that the subsequent payment for it by a legislature under the old constitution was a voluntary, not an obligatory act, and that the state was not thereby subjected to the payment of damages to her printer. To illustrate: Suppose a property-holder of this city, who practices building more or less each year, to make a contract with a mechanic to do all his work in that line for a period of time; suppose him to designate to the mechanic, from time to time, buildings for him to erect, and all that said proprietor procures or wishes to be erected by any one; that in the meantime, some person, without the knowledge or consent of said proprietor, procures some other mechanic to erect, on ground of said proprietor, a building which he had no desire or intention to have placed upon it, but which he should subsequently conclude, as a mere free and liberal act, to pay for; that the mechanic in the employ of said proprietor then sues him for damages on account of said last-mentioned building: would

not said proprietor reply to said mechanic, "I have adhered to my contract with you, have given you all the building I have procured to be done, or that I wished or you expected, when employed, should be done. I have in no manner injured you by voluntarily paying for this extra matter not desired by me." Like this, in principle, seems to us the case under consideration; and if an individual would not be liable to damages under such circumstances, still less, we think, would the state in the case before us.

It may be proper to observe that the call of the convention impliedly, perhaps, bound the legislature to pay for such printing as was necessary, if any was, to the accomplishment of the purpose for which the convention was declared in the law to be called, viz., the amending of the then constitution of the state. Beyond this, at all events, no printing was authorized, and, to this extent, if the legislature was legally bound to give her state printer all her public printing, said printer might have reason to complain. Of the printing in question, however, but little if any could be regarded as necessary.

It is the unanimous opinion of the Court that the decree below must be affirmed.

*Per Curiam.*—The decree is affirmed with costs.

*J. Morrison, S. Major,* and *J. A. Liston,* for the appellants.

*D. Wallace, L. Barbour,* and *A. G. Porter,* for the state.