## J. C. CLELAND ET AL. V. GEORGE F. ANDERSON ET AL.†

FILED NOVEMBER 6, 1902.   NO. 12,160.

Commissioner's opinion, Department No. 2.

1. **Statute: GRANT OF SPECIAL PRIVILEGE: SPECIAL LEGISLATION.** Chapter 91a, Compiled Statutes, 1901, does not grant to any individual special or exclusive privileges or immunities, within the inhibition of section 15, article 3, of the constitution, and is not special legislation within the meaning of said section.

2. **Constitutional Law: AMENDMENT: READING ON THREE DIFFERENT DAYS.** Section 11, article 3, of the constitution, does not require that amendments made to a bill while under consideration by the legislature be read at large before each house on three different days; but it is sufficient that such amendments be printed, as required by said section, and that the bill, as amended, be adopted by both houses.

3. **Retail Lumber Dealers' Association: UNLAWFUL COMBINE.** An association of retail dealers in lumber, organized, as stated by its constitution, to prevent its members from being subjected to competition of wholesalers, which requires a fixed amount of stock, continuously carried, to entitle a dealer to membership, and levies upon and collects from wholesale dealers a penalty in case they make sales to consumers directly, or to retail dealers not eligible to membership in the association, is unlawful under section 1, chapter 91a, Compiled Statutes.

4. ———: **NUMBER: RATIO.** Under the provisions of section 1, chapter 91a, Compiled Statutes, the number of dealers who engage in such unlawful combination and the proportion they bear to the whole number of dealers in the same trade, is not material.

5. ———: **RIGHT OF ACTION.** A dealer who is injured in any way by such an unlawful combination may bring an action under

---

* Ex-Governor, now Senator, Tillman read and corrected the proof of the above note.—W. F. B.

† Rehearing allowed.   See opinion, p. 273, *post*.

section 11, chapter 91a, Compiled Statutes, against the members thereof, or any one or any number of them, to recover his damages.

6. ——: EVIDENCE: HINDERING SALES.   Where the express object of an association of retail dealers is to prevent competition by wholesalers in selling to consumers directly, or to retail dealers not eligible to membership in the association, the acts of any of its members or of any persons acting in concert with them, in endeavoring to prevent or hinder sales by wholesale dealers to a particular retail dealer not eligible to membership, are in furtherance of the common design, and may be shown in evidence against all, whether directly participated in or expressly authorized by the association as a whole or not.

7. ——: ACTS AND DECLARATIONS: INSTRUCTIONS.   Evidence of acts and declarations of persons alleged to have been engaged in an unlawful combination in furtherance of its purpose, is admissible not only to charge the several persons engaged therein with the consequences of such acts, but also to establish the existence and extent of the combination.   If the combination or the participation of one or more of the defendants therein is not shown sufficiently, the court should be requested to instruct that the evidence can only be considered against those whose acts or declarations were proved.

8. Unliquidated Claim for Damages: JOINT WRONG-DOERS: SATISFACTION.   When an unliquidated claim for damages against a number of joint wrong-doers is satisfied by one or more of the persons liable, it is extinguished as to all.

9. Cause of Action Which Survives: PERSONAL REPRESENTATIVE: TRUSTEE IN BANKRUPTCY.   A cause of action which would survive and pass to the personal representative of the plaintiff, so that the avails thereof would be distributed in administration of his estate, will pass to his trustee in bankruptcy under the provisions of section 70 of the bankruptcy act of 1898.

10. Action: DEATH: ABATEMENT: REVIVOR: PERSONAL REPRESENTATIVE.   By virtue of section 455, Code of Civil Procedure, an action under section 11, chapter 91a, Compiled Statutes, would not completely abate on the death of the plaintiff, but could be revived and maintained by his personal representative.

11. Interest of Bankrupt in Action Pending at Act of Bankruptcy Passes to Trustee and Claimant Under Trustee's Sale May Satisfy Claim.   Hence, whatever might be the rule had no action been begun prior to filing of a petition in bankruptcy, so that the cause of action would not survive under section 454, Code of Civil Procedure, the interest of a bankrupt in

such an action, pending at the time of his bankruptcy, passes to his trustee, and a purchaser and assignee thereof claiming under a trustee's sale may satisfy the claim.

12. **Unincorporated Voluntary Association:** RIGHT OF ACTION. A voluntary association, unincorporated, which is not organized to carry on some trade or business or to hold property in this state, and does not in fact carry on a trade or business or hold property therein, can not sue or be sued as such.

13. **Erroneous Instruction:** DIRECTING VERDICT. An erroneous instruction directing a verdict in favor of certain defendants, participants in a joint wrong, affords no ground of complaint to co-defendants jointly and severally liable with them.

ERROR from the district court for Dawson county. Tried below before SULLIVAN, J. *Reversed.*

The history of the case appears in the opinion.

*Stinson & Martin,* for plaintiff in error Cleland.

*E. A. Cook,* for plaintiff in error Carroll.

*E. A. Cook, Stinson & Martin* and *Kennedy & Learned,* for plaintiff in error Nebraska Lumber Dealers' Association:

The objection of the association to the introduction of any evidence, should have been sustained. *Morgan v. Bergen,* 3 Nebr., 209; *McWilliams v. Lawless,* 15 Nebr., 131; *Wheeler v. Walden,* 17 Nebr., 122.

Chapter 91*a,* Compiled Statutes, is unconstitutional:

1. It was never constitutionally passed by both branches of the legislature. For the purpose of determining this fact, the court will examine the journals. *Webster v. City of Hastings,* 59 Nebr., 563; *State v. Burlington & M. R. R. Co.,* 60 Nebr., 741.

2. The legislature undertook to grant organizations of laboring men special immunities and privileges. *Low v. Rees Printing Co.,* 41 Nebr., 127. Special legislation as to irrigation companies. *State v. Farmers & Merchants' Irrigation Co.,* 59 Nebr., 1.

3. The title to the act gave no hint of the provisions contained in section 9. This rendered the act unconstitutional under section 11, article 3 of the constitution.

The object of this provision is to prevent surreptitious legislation. *State v. Bemis*, 45 Nebr., 724.

It is to give certainty to a law by removing all apparently conflicting provisions. *State v. Wish*, 15 Nebr., 448.

To insert in a pending bill a section exempting from its provisions certain classes or associations of persons, where the title of the act applies its provisions to corporations, individuals and associations generally, is to mislead and deceive members of the legislature voting on the bill; and is surreptitious legislation in its most obnoxious form. If the adoption of section 9 was an inducement to the passage of the bill, the entire act is unconstitutional. *Board of Education v. Moses*, 51 Nebr., 288.

*Henry D. Rhea, Hector M. Sinclair* and *Warrington & Stewart, contra.*

*Henry D. Rhea:* The object of the statute is to free business from being controlled by combinations, whether of persons, associations or corporations. *San Antonio Gas Co. v. State*, 22 Tex. [Civ. App.], 118.

It does not require that a complete monopoly has been established as contended by the defendants in their respective answers. It is enough to show that the lumber dealers in the state are members of the association against whom complaint has been made of the acts committed. *United States v. Knight*, 156 U. S., 1.

It makes no difference whether the people suffer or not. *Central Ohio Salt Lake Co. v. Guthrie*, 35 Ohio St., 666.

*Hector M. Sinclair:* It is further contended that this statute was not passed in conformity to the constitution. Of this we know nothing, further than that this question was not raised, tried or determined in the court below.

If the entire act is void, still we have a good cause of

action at common law. *Rex v. Cope,** 1 Strange [Eng.], 144; *State v. Stewart,* 59 Vt., 273.

Argued orally by all the counsel for both parties to the record.

*Sinclair,* for defendants in error:

I feel it my duty to call the court's attention to what seems to me a dangerous and assumptive practice to which, it is to be hoped, this court is not committed beyond recall. Reference is made to the—pardon me, I had almost said pernicious—practice of the court in exploring the records in the office of the secretary of state, and taking judicial cognizance of any discovery resultant upon such inquisition. The evil, uncertainty and unfairness of this vicious doctrine must be obvious to every reflecting mind. Allow me to read from a decision of the supreme court of Illinois:

Although we take judicial notice of all acts of the legislature signed by the governor, and found in the office of the secretary of state, and although for some purposes we may take judicial notice of the legislative journals, yet it is not our province, at the suggestion or request of counsel, to undertake to explore these journals for the purpose of ascertaining the manner in which a law duly certified went through the legislature and into the hands of the governor. *Illinois Central R. Co. v. Wren,* 43 Ill., 77, 79.

POUND, C.

Anderson, one of the defendants in error, who will be referred to as plaintiff, brought this action against Cle-

---

* In this case Lord Chief Justice Pratt, of Christopher-Layer fame, presided. The husband and wife and servants were indicted for a conspiracy to ruin the trade of the prosecutor, who was the king's card-maker. The evidence against them was, that they had at several times given money to the prosecutor's apprentices to put grease into the paste, which had spoiled the cards. But there was no account given, that ever more than one at a time were present, though it was proved they had all given money in their turns. It was objected, that this could not be a conspiracy, for two men might do the same thing without having any previous communication with one another. But the chief justice ruled, that the defendants being all of a family, and concerned in making of cards, it would amount to evidence of a conspiracy, and directed the jury accordingly. It is passing strange that the counsel for the people in *Spies v. People,* 122 Ill., 1, did not find this case.—W. F. B.

land, Carroll, Back and West, and the Nebraska Retail Lumber Dealers' Association, who will be called defendants, under section 11, chapter 91a, Compiled Statutes,* 1901, to recover damages sustained by reason of an alleged unlawful combination and conspiracy to prevent competition, regulate prices, and control the purchase and sale of lumber, whereby he alleged he had been driven out of business as a dealer in lumber, and forced into bankruptcy. Plaintiff was a contractor and builder and alleged also that he was a buyer, seller and shipper of lumber at wholesale and retail, doing business at Gothenburg and North Platte, and maintaining a lumber yard at the place last named. Cleland was secretary of the defendant association. The defendants Carroll, Back and West were retail dealers at Gothenburg, and Carroll was a member of the association. It appears in evidence that in May, 1899, the defendants Carroll, West and Back, with three retail lumber dealers at North Platte, members of the association, signed a circular, which was signed and attested by the defendant Cleland as secretary of the association, addressed "To the Trade," in which they set forth that "there is no such concern as the Anderson Lumber Co. of North Platte," that G. F. Anderson is not a "regular dealer," and "warn all shippers and dealers to refrain from quoting or shipping to either of the above names or by their order." This circular was printed at Fremont, where the secretary of the association resided, and was shown to have been sent to wholesale dealers of whom plaintiff had been purchasing. It was also shown that members of the association had sent letters and telegrams to wholesale dealers protesting against sales to plaintiff, or stating that he was not a regular dealer entitled to buy at wholesale as such. The constitution and by-laws of the association were put in evidence, and from them it appears that the object and purpose of the organization, among other things, are to prevent its members from being subjected to competition of wholesalers. They provide who shall be considered a

* Cobbey, Annotated Statutes, sec. 11510.

23

retail dealer, entitled to purchase at wholesale as such, and require a stock of 75,000 feet, continuously carried, and a yard and office continuously occupied, in order to make a dealer at retail "regular," so as to be entitled to membership. They provide for a penalty to be levied upon and collected from wholesalers who sell directly to consumers, or to others than "regular" dealers; and they permit wholesale dealers to become "honorary members." There are other provisions in the constitution and by-laws whereby similar organizations in other states are to be advised and warned against irregular dealers, and sales to such persons by the wholesalers. A resolution adopted by the association in February, 1899, is also in evidence, wherein all manufacturers and jobbers of lumber are requested to abstain from selling to certain dealers named, and are "solemnly assured" that the members of the association will not buy of anyone who sells to such dealers under any circumstances. One wholesale dealer, who, it appears, had paid a penalty levied upon him for selling to plaintiff, testifies that he ceased to sell to him because of the objections made thereto; and there is evidence tending to show that by reason of the circular, letters and telegrams referred to, plaintiff became unable to buy further of those from whom he had been purchasing, and was driven out of business. The several defenses urged may be stated most conveniently in connection with the points argued in this court. Upon trial to a jury, the court directed a verdict in favor of Back and West, who were not members of the association. The jury found against the remaining defendants, and error is prosecuted from the judgment rendered thereon.

The first and most important question raised relates to the constitutionality of chapter 91a, Compiled Statutes,* 1901, entitled "Trusts." Counsel challenge the constitutionality of this statute on three grounds: (1) Because section 9 expressly excepts organizations of laboring men for the purpose of raising wages from its operation,

* Cobbey, Annotated Statutes, sec. 11508.

whereby it is contended special and exclusive privileges and immunities are granted to laborers, contrary to section 15, article 3, of the state constitution; (2) because the bill for the act was amended while under consideration by the legislature, and after amendment was not read three times in each house; and (3) on the ground that said section 9, which was probably an inducement to the passage of the act, is broader than its title. The first of these objections is much the most serious. If laborers are clearly within the general scope and reason of the act, so that the provisions exempting them from its operation arbitrarily permit them to do acts in contravention of its terms and purposes which are forbidden to the public at large, there can be no doubt that the statute must fail. Statutes must be general and uniform throughout the state, and must operate alike upon all persons and localities of a class reasonably constituted with reference to the relations and circumstances provided for. *State v. Farmers & Merchants' Irrigation Co.,* 59 Nebr., 1; *Low v. Rees Printing Co.,** 41 Nebr., 127; *Van Horn v. State,* 46 Nebr., 62. On the other hand, if the legislature has made a reasonable classification,—not a mere cloak or cover for an arbitrary exemption of certain persons or a certain class of persons, but a natural and proper selection of those who, upon a reasonable view of the mischiefs to be met, should be subject to the regulations prescribed,—and the law is made to operate generally and uniformly upon all of the class so constituted, the constitutional provision in question is not violated. The power of the legislature to make classifications resting upon reasons of public policy and substantial differences of situation or circumstances which naturally suggest the justice or expediency of diverse legislation with respect to the objects classified, is undoubted. *Wenham v. State,* 65 Nebr., 394; *State v. Farmers & Merchants' Irrigation Co., supra;* Cooley, Constitutional Limitations [5th ed.], 481. Hence the question to be determined is whether the ex-

* 24 L. R. A., 702, 43 Am. St. Rep., 670.

ception contained in section 9 of the act under considera-
tion is arbitrary and without sound reason, arising from
the situation and circumstances of the subject of the legis-
lation (*Livingston Loan & Building Ass'n v. Drummond*, 49
Nebr., 200, 205), or based on a reasonable and just view of
the subject-matter, and the different conditions it presents.
*Wenham v. State, supra.* Applying these principles, and
bearing in mind that all doubts are to be resolved so as to
uphold the enactments of the legislature, if possible, we
think the statute is constitutional and valid. In its letter
and spirit, it refers only to combinations and conspiracies
of persons engaged in the manufacture, sale and trans-
portation of goods, wares and merchandise, to prevent or
hinder competition, and regulate and control prices. No
express exception of organizations of laborers intended to
maintain or advance wages was necessary to exempt them
from its operation. The section in question is inserted,
rather, out of abundance of caution, to prevent judicial
extension of the terms of the act beyond its scope and pur-
pose, than to grant a privilege or immunity to persons who
would otherwise fall within its terms. The distinction
between goods and merchandise produced by skill and
labor and the skill and labor which produce them is mani-
fest and reasonable. The statute does not say that labor-
ers who have goods, wares or merchandise, the product of
labor, for sale, may combine to advance or control the
price, but only that the law designed to prevent combina-
tions in restraint of trade in such articles, when produced,
shall not be construed to affect organizations formed to
regulate the wages or compensation of the labor and skill
which produce them. This distinction is suggested in
*Downing v. Lewis*, 56 Nebr., 386, 389. In that case it was
held that a laundry was not within the purview of the
statute under consideration. It is pointed out very aptly
that the business of a laundry is "to make clothes clean
rather than to make clean clothes." In other words, it
sells no goods or wares. It merely bestows labor and skill
upon them. The purpose of the statute, as stated in that

case, is "to prevent manufacturers and dealers in articles of commerce from combining for the purpose of lessening competition, regulating production, and increasing profits." Labor and skill are not articles of commerce,—at least not in the same sense as the articles thereby produced; and we think the classification which distinguishes between them, and provides for a diversity of legislation with respect to them, is reasonable and proper. The decisions to which we have been referred by counsel do not conflict with this view. In *Low v. Rees Printing Co.*, 41 Nebr., 127, a statute regulating the hours of labor excepted certain kinds of laborers from its operation. The court held that classification for legislative purposes must have some reasonable basis, and that the exemption in question was arbitrary and unreasonable. It will be seen that the exemption in that case applied clearly to persons who would otherwise have fallen within the purview of the statute. The scope and purpose of the act was to regulate the hours of labor, but laborers engaged in certain kinds of work were excepted. In *Connolly v. Union Sewer Pipe Co.*, 22 Sup. Ct. Rep., 431, the statute under consideration exempted agricultural products or live stock, while in the hands of the producer or raiser, from the operation of a statute against combinations in restraint of trade. Here, again, the classification was arbitrary and unreasonable. One set of persons might, while others might not, combine to fix the price of precisely the same articles. Persons producing and selling ordinary articles of commerce were not allowed to combine, while those who sold agricultural products or live stock, if raised by themselves, might do so. In the case at bar, the statute applies equally to all kinds of goods and products, and the exception relates only to a matter not within the general scope of the act, which is not necessarily reached by its language nor covered by its intent, even without the section here in question. In *Niagara Fire Ins. Co. v. Cornell*, 110 Fed. Rep., 816, the federal circuit court for this district reached the opposite conclusion. The discussion of this point (p. 825) is

very brief, and is based on *Low v. Rees Printing Co.,**
*supra.* The court says: "Dozens of statutes have been
held invalid by appellate courts which sought to make it
invalid for one class of men to do one thing and lawful
for other men, practically under the same circumstances,
to do another, but like, thing." This is true, but the ap-
plication made seems to us superficial. It assumes the
whole issue. Statutes are not to be set aside lightly, and
we are unable to concur in the view which the federal
court has taken. The other objections urged against the
statute in that case have not been argued and are not be-
fore us. But we may say that in our judgment it proceeds
too much upon questions of expediency, which are for the
legislator, rather than the judge, and does not sufficiently
attend to the salutary principle that statutes are to be
construed so as to make them constitutional and valid, if
possible.

The other objections to the constitutionality of the
statute do not impress us as very substantial. In *State v.
Liedtke,* 9 Nebr., 490, it was held that an amendment to a
bill made by a conference committee after the two houses
had failed to agree need not be printed as required by sec-
tion 11, article 3, of the constitution, because not within
the scope of that section, as determined by its purpose.
As to other amendments made to a bill while under con-
sideration by the legislature, we think a fair construc-
tion of the constitution does not require that such amend-
ments, or the bill as amended thereby, be read at large
before each house on three different days, but that it is
sufficient that they be printed, as required by the sec-
tion in question, and that the bill, as amended, be adopted
by both houses. As the court observed in *State v.
Liedtke:* "Any other line of construction, if followed in
its necessary sequence, would lead to a condition of re-
peated printings and readings on different days, which
would tend to becloud rather than to enlighten the legis-
lator, and would render it impossible to perform the

*24 L. R. A., 702, 43 Am. St. Rep., 670.

necessary legislation within the forty days to which another section of the constitution limits each session of the legislature." Pp. 494, 495. The objection that the act is broader than its title is based upon the claim that section 9, already referred to, which provides that nothing in the foregoing sections shall be construed to embrace organizations of laborers to raise or maintain wages, is a special exemption or the grant of a privilege or immunity, which the title does not contemplate. But if we have construed that section correctly in passing on its effect upon the validity of the act as a whole, it is in no way beyond or without the purposes and objects indicated by the title. It does not add another provision, not embraced in the title; it restricts the provisions that precede it to those matters which the title indicates.

We have next to consider whether under the evidence in this case the organization known as the Nebraska Retail Lumber Dealers' Association is an unlawful combination so as to subject the members thereof and those who may unite with them in furtherance of its objects, to suit under section 11, chapter 91a, Compiled Statutes,[*] and make them liable for the acts of such members or persons uniting with them, or some of them, which result in damage to others. Counsel have urged with no little ingenuity that the objects of the association are entirely lawful, and have cited in support of their position *Bohn Mfg. Co. v. Hollis*,[†] 54 Minn., 223, 55 N. W. Rep., 1119; *Macauley v. Tierney*,[‡] 19 R. I., 255, 33 Atl. Rep., 1; and *Herriman v. Menzies*,[§] 115 Cal., 16, 46 Pac. Rep., 730. Those cases follow the principle, established in England in the leading case of *Mogul Steamship Co. v. McGregor*, 21 Q. B. Div. [Eng.], 544, and reiterated in the recent case of *Allen v. Flood* [1898], App. Cas. [Eng.], 1, that a number of persons may do jointly or by concert or agreement anything which each of them might do singly. As a general proposi-

---

[*] Cobbey, Annotated Statutes, sec. 11510.
[†] 21 L. R. A., 337, 40 Am. St. Rep., 319.
[‡] 37 L. R. A., 455, 61 Am. St. Rep., 770.
[§] 35 L. R. A., 318, 56 Am. St. Rep., 81.

tion this is beyond controversy, and it is no less true that the motive with which a right is exercised does not render the exercise thereof unlawful. *Allen v. Flood, supra; Letts v. Kessler,*\* 54 Ohio St., 73, 42 N. E. Rep., 765; *Phelps v. Nowlen,*† 72 N. Y., 39; *Jacobson v. Van Boening,*‡ 48 Nebr., 80. Hence, so long as one dealer may lawfully refuse to buy of or sell to another or others, if he pleases, whatever his motive, two or more may exercise the same power in concert. On the other hand it is equally well settled that combinations and conspiracies in restraint of trade are unlawful and actionable at common law, and it has been held that combinations between independent dealers which have the effect of preventing competition are within this rule, without regard to what may be done in pursuance of them, and although the object is merely to protect against ruinous rivalry, without any attempt to charge undue and excessive prices. *People v. Sheldon,* 139 N. Y., 251 34 N. E. Rep., 785, 23 L. R. A., 221, 36 Am. St. Rep., 690. While persons have a right to withdraw their trade from whom and as they please, they have no right to unite in restraint of competition; and when they go beyond mere withdrawal of business and employ coercion or intimidation to prevent free dealing, a different question is presented. Upon these grounds, the decision in *Bohn Mfg. Co. v. Hollis, supra,* has been criticised in *Jackson v. Stanfield,*§ 137 Ind., 592, 36 N. E. Rep., 345, and an association of lumber dealers in all respects of the same nature as the one here in question held unlawful. The general course of decisions has been to the same effect. *More v. Bennett,* 140 Ill., 69, 29 N. E. Rep., 888; *Lovejoy v. Michels,* 88 Mich., 15, 49 N. W. Rep., 901; *Buffalo. Lubricating Oil Co. v. Standard Oil Co.,* 106 N. Y., 669, 12 N. E. Rep., 825; *Delz v. Winfree,* 80 Tex., 400, 16 S. W. Rep., 111; *United States v. Jellico Mountain Coal & Coke Co.,* 46 Fed. Rep., 432. The provisions of section 1,

---

\* 40 L. R. A., 177.                    ‡ 32 L. R. A., 229, 58 Am. St. Rep., 684.
† 28 Am. Rep., 93.                      § 23 L. R. A., 588.

chapter 91a, Compiled Statutes, 1901,* are very broad, and expressly cover any combination of dealers intended "to prevent others from conducting or carrying on the same business" or which tends "to prevent or preclude a free and unrestricted competition among themselves or others or the people generally." The express object of the association in question, is to prevent competition of wholesale dealers in selling directly to contractors and other consumers, and it endeavors not only to prevent this, but to prevent its members from selling in localities where other members are in business, and to prevent wholesalers from selling to dealers who do not carry a stock of 75,000 feet and maintain a permanent yard. These purposes are clearly in contravention of the statute, and, however lawful its other objects, render its acts and the acts of its members and those who unite with them therein, so far as they are in furtherance of such purposes, unlawful and actionable. A point is made that a large number of dealers in the state are not members, and that the number of wholesalers who co-operate is relatively small. But the statute meets such a case expressly. It provides that combinations of this nature on the part of "two or more persons" shall be unlawful, and acts of even a single person, intended to prevent others from engaging in the same business, are prohibited. Hence the number of persons who engage in such combinations and the proportion they bear to the whole number of dealers in the same trade, is not material.

A number of errors are assigned upon rulings in the admission of evidence. One of these rulings, as will be seen presently, in our judgment, requires an order of reversal. Hence it will not be necessary to pass upon all of them. But several important questions are raised which will necessarily recur upon a new trial, and should be disposed of at this time. We think it clear, under the provisions of section 11, chapter 91a, Compiled Statutes,†

* Cobbey, Annotated Statutes, sec. 11500, and note.
† Cobbey, Annotated Statutes, sec. 11509, and note.

that a dealer who is injured in any way by an unlawful combination of the character referred to in the preceding sections may maintain an action against the members thereof, or any one or any number of them, to recover his damages. But counsel contend that unless the association, as such, authorized or participated in the acts whereby the plaintiff was injured, neither the association nor those of its members who did not take part directly in the acts complained of should be held by reason thereof, and that such acts are not admissible in evidence against them. On this ground a number of letters and telegrams sent to wholesale dealers by individual members of the association were objected to, and the admission of this class of evidence is made the basis of several exceptions. We think the rulings of the trial court as to these offers were correct. One of the express objects of the association is to prevent competition by wholesalers in selling to consumers directly, or to retail dealers not eligible to membership in the organization. According to the definition of the constitution and by-laws, plaintiff was a consumer, and was not entitled to become a member. The acts of the secretary and of the other defendants in endeavoring to prevent or hinder sales to the plaintiff were in furtherance of the common design. Hence they might properly be shown in evidence against all, whether directly participated in or expressly authorized by the association, as a whole, or not. These letters and telegrams, the circular, and the resolution passed by the association a few months before, were admissible to establish the nature and extent of the combination, as well as to charge the several persons engaged therein with the consequences of such acts. A well-known text-writer, quoted from in *Farley v. Peebles,* 50 Nebr., 723, says: "Wherever the writings or words of any of the parties charged with or implicated in a conspiracy can be considered in the nature of an act done in furtherance of the common design, it is admissible in evidence, not only as against the party himself, but as proof of an act from which (*inter alia*) the

jury may infer the conspiracy itself." 2 Archbold, Criminal Procedure [8th ed.], 621.*   Almost all of the acts, evidence whereof is objected to, were undoubtedly admissible as against those defendants who directly took part in them.   If the combination, or the participation of others of the defendants therein, was not shown sufficiently, the court should have been requested to instruct that the evidence could be considered only against those whose acts or declarations were proved.   The evidence was properly received.   *Farley v. Peebles*, 50 Nebr., 723.

The defendants pleaded and offered to prove that prior to the commencement of this action the plaintiff had brought an action for precisely the same wrong against Iddings, Birge and Field, three other members of the association, who had signed the circular above referred to; that pending such action he had gone into bankruptcy, and had listed the pending action among his assets; and that thereupon his interest therein had been duly sold at trustee's sale, and the purchaser and assignee at such sale had made a settlement with the defendants sued, and satisfied the cause of action in full.   This evidence was rejected. We have no doubt that several actions might have been maintained at the same time against the various parties to the unlawful combination, and that they might have proceeded to judgment without one barring another.   But it is equally clear that a satisfaction of any one of the judgments, or of the cause of action as against any of the defendants, would satisfy the whole claim.   When an unliquidated claim for damages against a number of joint wrong-doers is satisfied by one or more of the parties liable, it is extinguished as to all.   *Bryant v. Reed*, 34 Nebr., 720. Hence we have to consider next whether the plaintiff's interest in the pending action passed to the trustee, so that it was capable of transfer at the sale, and could come into the hands of the purchaser and assignee who made the settlement.

* The law here laid down by Archbold is based upon the rulings of Mr. Justice Bayley in the trial of Henry Hunt and others for the alleged Peterloo riot in 1819.   Narratives of State Trials in the Nineteenth Century, vol. 2, 264-308.—W. F. B.

Section 70* of the national bankruptcy law provides that all property of the bankrupt shall vest in the trustee which "prior to the filing of the petition he could by any means have transferred." Defendants offered to prove that the cause of action against Iddings, Birge and Field was the basis of a pending suit at the time bankruptcy proceedings were instituted, and the question arises, therefore, whether either the cause of action or the interest of the bankrupt in the action based thereon was of such a nature that he might have transferred it "by any means" prior to the institution of the bankruptcy proceedings. It seems to be well settled that causes of action which are purely personal in their nature and of such a character that the bankrupt alone can enforce them, do not pass to or vest in the trustee. In *Rogers v. Spence,* 13 Mees & Wel. [Eng.], 570, 580, a leading case, Lord Denman said: "As the object of the law is manifestly to benefit creditors, by making all the pecuniary means and property of the bankrupt available to their payment, it has, in furtherance of this object, been construed largely, so as to pass, not only what in strictness may be called the property and debts of the bankrupt, but also those rights of action to which he was entitled for the purpose of recovering, in *specie,* real or personal property, or damages in respect of that which has been unlawfully diminished in value, withheld or taken from him; but causes of action not falling within this description, but arising out of a wrong personal to the bankrupt, for which he would be entitled to remedy whether his property were diminished or impaired or not, are clearly not within the letter, and have never been held to be within the spirit, of the enactments, even in cases where injuries of this kind may have been accompanied or followed by loss of property." This principle has been followed in all subsequent cases, and the provisions of later bankruptcy acts appear to have been largely declaratory of the ruling here laid down. Accordingly it has

* 30 U. S. Statutes at Large, p. 565. U. S. Compiled Statutes, 1901, p. 3451.

been held that a cause of action for malicious prosecution (*In re Haensell,* 91 Fed. Rep., 355; *Noonan v. Orton,* 34 Wis., 259), for deceit (*Tufts v. Matthews,* 10 Fed. Rep., 609; *Zabriskie v. Smith,* 13 N. Y. 322; *In re Crockett,* 2 Ben. [U. S. C. C.], 514, Fed. Cas. No. 3402), or to recover usury under a statute making the cause of action personal to the borrower (*Bromley v. Smith,* 2 Biss. [U. S. C. C.], 511), will not pass to the assignee or trustee in bankruptcy. We think it reasonably clear that the cause of action in this case was one which, in the absence of legislation making it assignable, would not pass to the trustee. A very similar case was presented in *Murray v. Buell,* 76 Wis., 657, 45 N. W. Rep., 667. In that case it was held that a cause of action arising out of a conspiracy to monopolize the entire coal business of a city, and to drive a coal dealer out of business, was not assignable, either at common law or under the statutes of that state. The general rule is that a right of action for injuries affecting the estate, rather than the person, is assignable, so that, for instance, conversion of property, trespass upon land or to personalty, deceit whereby money is fraudulently obtained, negligence resulting in injury to or destruction of property, and matters of that kind, give rise to causes of action which may be assigned. On the other hand, injuries affecting the person primarily, such as assault and battery, slander or libel, malicious prosecution, and the like, give rise to causes of action which are not assignable. The injury in the case at bar may well be held to come within the latter category, and were it not for the provisions of section 455 of the Code of Civil Procedure, we should hold that the interest of the bankrupt in an action based upon such an injury did not vest in the trustee. But there is another principle which is well settled in this connection, namely, that causes of action which survive and pass to the personal representative may be assigned. It is obvious that if, upon the death of a plaintiff, his cause of action would pass to his personal representatives, and be enforceable by them, so as to constitute part of his estate which might be

administered for the benefit of creditors, it ought equally to pass to his trustee in bankruptcy for administration to the same end. The rule is universally recognized, that causes of action which survive and may be enforced by the personal representative are assignable, and may be enforced by an assignee. *Zabriskie v. Smith*, 13 N. Y., 322; *Grant v. Ludlow*, 8 Ohio St., 1; *Stewart v. Balderston*, 10 Kan.,131; *Chouteau v. Boughton*,100 Mo., 406; *Finn v. Corbitt*, 36 Mich., 318; 2 Am. & Eng. Ency. Law [2d ed.], 1017. Section 455, Code of Civil Procedure,* provides that "no action pending in any court·shall abate by the death of either or both the parties thereto, except an action for libel, slander, malicious prosecution, assault, or assault and battery, for a nuisance, or against a justice of the peace for misconduct in office." In *Webster v. City of Hastings*, 59 Nebr., 563, this court held that by reason of said section an action for personal injuries does not abate by the death of the plaintiff, but may be continued and the cause of action enforced by the plaintiff's personal representative. As the statute is construed by the court, no action will abate by reason of the death of the plaintiff, whatever the nature of the cause of action upon which it is based, except such as are expressly named. Under that section, therefore, whatever might have been the rule had not an action been pending, it must be held that the interest of the bankrupt in the action brought by him against Iddings, Birge and Field would have passed to his personal representative upon his death, and in consequence was assignable. These considerations serve at once to distinguish the case at bar from *Murray v. Buell, supra*. In Wisconsin, section 4253 of the statutes of 1898 contains substantially the same provisions as section 454 of our Code.† Under those provisions, causes of action which would not have survived at common law will not survive now except certain causes of action therein expressly named; and these do not include the one here in question. But the Wisconsin

* Cobbey, Annotated Code, sec. 455.

† Cobbey, Annotated Code, sec. 454.

Code contains no such provision as section 455 of our Code, and consequently, whereas it is held in this state that a pending action for a personal injury will not completely abate on the death of plaintiff, but may be revived and carried on by his representative, in Wisconsin it is held that such an action does abate, and may not be maintained by the personal representative, except in so far as the plaintiff seeks to recover for injury to his property, and possibly for expenses of medical attendance and the like. *Randall v. Northwestern Telegraph Co.,* 54 Wis., 140, 11 N. W. Rep., 419. It is clear, therefore, that *Murray v. Buell* is not an authority in this jurisdiction, and that we have no other course, under the provisions of our Code, than to hold that the plaintiff's interest in the pending action was of such a nature that it might have been transferred, and, in consequence, came within the express provisions of section 70* of the bankruptcy act. As to a cause of action of this nature not in suit, under the provisions of section 454, Code of Civil Procedure, and the ruling in *Murray v. Buell, supra,* we should be inclined to hold that nothing would pass to the trustee. Consequently the plaintiff's bankruptcy would have no effect upon the present action, unless defendants sustain their allegations as to the action against Iddings, Birge and Field, the sale of plaintiff's interest therein by the trustee, and the settlement by the purchaser, by competent proof.

The petition alleges that the Nebraska Retail Lumber Dealers' Association is a "chartered association organized under the statutes of the state of Nebraska." Whether this means that the association is incorporated, is not clear. It certainly does not meet the requirements of the Code as to suits against voluntary associations. *Burlington & M. R. R. Co. v. Dick,* 7 Nebr., 242. Construing the pleading liberally, after judgment, we should hold that it sufficiently alleges incorporation. But the defendant denied incorporation, and alleged that it was a voluntary

* 30 U. S. Statutes at Large, p. 565. U. S. Compiled Statutes, 1901, p. 3451.

association, not organized to trade or do business in this state, nor to hold property therein; and the evidence shows such to be the fact. The association, as such, does no more than hold certain meetings and choose certain officers, who take the initiative in carrying out its purposes. A voluntary association, unincorporated, which is not organized to carry on some trade or business or to hold property in this state, and does not in fact carry on a trade or business or hold property therein, can not sue or be sued as such. *Burlington & M. R. R. Co. v. Dick,* 7 Nebr., 242, 246. The individual members are to be sued in such cases, not the association.

Certain of the defendants complain of the action of the trial court in directing a verdict for their co-defendants Back and West. We do not think the fact that these defendants were not members of the association conclusive that they are not liable. They afterwards became members, and if they in fact united with the association, or some of its members, in furtherance of its unlawful purposes, they brought themselves within the provisions of section 1, chapter 91a, Compiled Statutes. But the plaintiff, not the other defendants, should make this objection. An erroneous instruction directing a verdict in favor of certain defendants, participants in a joint wrong, affords no ground of complaint to co-defendants jointly and severally liable with them. In *Gerner v. Yates,* 61 Nebr., 100, cited by counsel, the plaintiff complained that one of the defendants had been released improperly, which is quite another matter.

We therefore recommend that the judgment be reversed, and the cause dismissed as to the defendant the Nebraska Retail Lumber Dealers' Association, but remanded for a new trial as to the defendants Cleland and Carroll.

BARNES, C., concurs. OLDHAM, C., did not sit.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed, and the cause dismissed as to defendant the Nebraska Retail

Lumber Dealers' Association and remanded for a new trial as to the defendants Cleland and Carroll.

REVERSED AND REMANDED.

The following opinion on rehearing was filed July 3, 1903. *Former judgment adhered to:**

Commissioner's opinion, Department No. 3.

National Bankruptcy Act: PROPERTY. Where the state statutes make a distinction between a plaintiff's interest in · pending action and his cause of action before suit brought, making the one assignable in cases where the other is not, the interest of a bankrupt in a pending action, which he might sell and assign, and of which his creditors might obtain the benefit on administration of his estate, is to be held "property," within the purview of subdivision 5, section 70, national bankruptcy act, rather than a "right of action" under subdivision 6.

POUND, C.

The facts are stated at length in the former opinion. It may be desirable, however, to restate briefly the particular circumstances out of which the point argued upon this rehearing arises. Anderson had a cause of action for injury to his business, under section 11, chapter 91a, Compiled Statutes, against some seven joint tort-feasors. He brought an action against three of them. Pending the action he became bankrupt and listed his interest therein among his assets. In consequence, it was sold, along with his other property, and the purchaser made a settlement with the defendants. Afterwards, he brought the present action against the four other tort-feasors, who set up the settlement and satisfaction in bar. The question is whether the interest of the bankrupt in the pending action passed to the trustee and thence to the purchaser, so as to have enabled the latter to make a settlement.

Section 70† of the national bankruptcy act, by which this question must be determined, is not entirely clear. While doubtless intended to cover everything of value which

---

* Rehearing allowed. See opinion, p. 276, *post*.

† 30 U. S. Statutes at Large, p. 565. U. S. Compiled Statutes, 1901, p. 3451.

24

ought to be applied upon the claims of creditors, it does so in a somewhat clumsy and confused form, which makes construction difficult. It provides that the trustee shall be vested with the title of the bankrupt to "all (1) documents relating to his property; (2) interests in patents, patent rights, copyrights, and trademarks; (3) powers which he might have exercised for his own benefit, but not those which he might have exercised for some other person; (4) property transferred by him in fraud of his creditors; (5) property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him: *Provided,* That when any bankrupt shall have any insurance policy which has a cash surrender value payable to himself, his estate, or personal representatives, he may, within thirty days after the cash surrender value has been ascertained and stated to the trustee by the company issuing the same, pay or secure to the trustee the sum so ascertained and stated, and continue to hold, own, and carry such policy free from the claims of the creditors participating in the distribution of his estate under the bankruptcy proceedings, otherwise the policy shall pass to the trustee as assets; and (6) rights of action arising upon contracts or from the unlawful taking or detention of, or injury to, his property."

We have no doubt that Anderson's right of action against Iddings, Birge and Field, before suit brought, would not have passed, and that his cause of action against the defendants in the present action did not pass, to the trustee. Subdivision 6 clearly applies in each case; and, as the right of action did not arise upon contract nor from the unlawful taking or detention of, or injury to, the bankrupt's property, that subdivision leaves it in the bankrupt. But the question remains whether the interest of Anderson in the action pending against Iddings, Birge and Field, at the time he became a bankrupt, as distinguished from his right of action before he brought suit,

comes within the purview of subdivision 5, or is likewise to be governed by said subdivision 6. Ordinarily, we should consider the one as standing upon the same ground as the other. The Code, however, makes a clear and important distinction between them; the interest of a plaintiff in a pending action surviving and passing to the personal representative, so as to be available to creditors, and hence becoming assignable and saleable, in many cases where the cause of action before suit brought would abate. It would be an anomaly indeed if creditors of an estate could take advantage of rights not available to creditors of a bankrupt. A construction which would produce such an anomaly should be avoided if possible. We must look to the state law to see what the bankrupt might "by any means have transferred." Looking to the laws of this state, and finding that the interest in the pending suit here in controversy was transferable, and that our laws distinguished it from a right of action not in suit, it would seem that this distinction should be borne in mind in construing the general language of the federal statute, which was meant to be adjusted to the many and diverse local laws and statutes of the several states of the Union, so as to subject all of the debtor's estate, not exempt or otherwise beyond the reach of creditors, to the payment of his debts. We think, therefore, that where the state statutes make a distinction between a plaintiff's interest in a pending action and his cause of action before suit brought, making the one assignable, in cases where the other is not, the interest of a bankrupt in a pending action, which he might sell and assign, and of which his creditors might obtain the benefit on administration and distribution of his estate, in case of his death, is to be held "property" within the purview of subdivision 5, rather than a "right of action" under subdivision 6.

It may be said that subdivision 5 must be limited in meaning to tangible or corporeal property, by reason of the context, since subdivisions 2, 3 and 6 relate to particular species of incorporeal or intangible property. But

subdivision 5 contains a proviso as to policies of life insurance which negatives this construction, and many valuable rights and species of intangible property have been held to come within its purview. *In re Gaylord,* 111 Fed. Rep., 717; *In re Welling,* 113 Fed. Rep., 189; *In re Page,*[*] 46 C. C. A., 160, 107 Fed. Rep., 89; *Travellers' Ins. Co. v. Moses,* 63 N. J. Eq., 260, 49 Atl. Rep., 720; *In re Slingluff,* 106 Fed. Rep., 154; *Waldron v. Becker,* 33 Misc. Rep., 182, 68 N. Y. Supp., 402.

We therefore recommend that the former judgment be adhered to.

DUFFIE and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the former judgment of this court is adhered to.

The following opinion on rehearing was filed March 17, 1904. *Judgment below affirmed.*[†] BARNES, J., dissenting:

1. **Right of Action: TORT: PROPERTY: NATIONAL BANKRUPTCY ACT: PENDING ACTION: TRUSTEE IN BANKRUPTCY.** A right of action for tort, is not property within the meaning of the national bankruptcy act; and, even though an action is pending thereon, such right does not pass to the trustee in bankruptcy.

2. **Action for Tort: STATUTES: FEDERAL BANKRUPTCY ACT.** An action for conspiracy, whereby plaintiff was "driven out of business as a dealer in lumber," under section 11, chapter 91a, Compiled Statutes, 1901, is an action in tort, and does not arise "from the unlawful taking or detention of, or injury to, his property," within the meaning of the federal bankruptcy act.

SEDGWICK, J.

In each of the two former opinions in this case, the conclusion is based upon the proposition that a right of action in tort, upon which a suit is pending, passes to a trustee in bankruptcy under the fifth subdivision of the section of the bankruptcy act discussed in those opinions. It is assumed that our statute, which provides that a pending action in tort survives upon the death of the plaintiff,

---

[*] 59 L. R. A., 94.          † Rehearing allowed.

would enable ordinary creditors of the decedent to reach the cause of action in satisfaction of their claims. This is assuming a premise which is, to say the least, doubtful, and, even if sound, will not support the conclusion derived therefrom. If a right of action in tort, upon which an action is pending, may under our statute be classed in any sense as property, it does not follow that it is included in the fifth subdivision of the federal statute in question. That statute classifies these matters for itself; it specifies, first, documents; second, interests; third, powers; fourth and fifth, property; and sixth, rights of action. Upon such a classification, it will not do to say that rights of action are property. The plain intention of the statute, is to otherwise classify them and to distinguish, for the purpose of this classification, between property and rights of action. The sixth subdivision, therefore, must be taken to specify all rights of action that pass to the trustee in bankruptcy; and, as the right of action involved in this case is not included, it follows that it did not pass.

Upon the last hearing, it was contended that the claim upon which the action is founded is not in tort, but is for injury to property, under the sixth subdivision of the section of the federal statute in question. The argument is that by the action of the defendants the plaintiff's business was destroyed, and that business is property, within the meaning of the statute. The gist of the action was the "unlawful conspiracy and combination of the defendants to prevent competition, regulate prices, and control the purchase and sale of lumber." The resulting injury to plaintiff was that he was "driven out of business as a dealer in lumber and forced into bankruptcy." The conspiracy was, of course, a tort against the plaintiff and the injury was personal to him. It disqualified him to do business by reason of the position in which it placed him before the business world. His creditors might, and no doubt would, be benefited by plaintiff's ability to accumulate money. They were damaged by depriving him of his ability to do so, through loss of his business repu-

tation, just as they would have been through the loss
of a limb or other physical disability. Damages of this
nature do not arise "from the unlawful taking or deten-
tion of, or injury to, his property."

All other questions raised in this litigation seem to have
been properly disposed of in the former opinions.

The judgments heretofore entered in this case, are va-
cated and the judgment of the district court is

AFFIRMED.

BARNES, J., dissenting.

Having been a member of the department of the commis-
sion which formulated the former opinion in this case, I
still adhere to that opinion, and therefore dissent, but
without writing a dissenting opinion.

NOTE.—*Assignment of Tortious Rights of Action.*—In distinguishing
between tortious acts which are assignable and those which are not,
the test ordinarily is: Will the right of action survive to the personal
representatives of the assignor? A right of action for assault and
battery, breach of promise, false imprisonment, malicious prosecu-
tion or slander—in which the damages consist in mental or corporal
anguish—is not assignable. But a right of action for conversion,
trespass, or case for negligence resulting in the injury or destruction
of property, is assignable, for example:

A mere right of action for fraud unconnected with any property
which has a legal existence and value, is not assignable. *Archer v.
Freeman*, 124 Cal., 528.

A right of action for official fees illegally exacted, is assignable.
*Stewart v. Balderston*, 10 Kan., 131.

Where an insolvent debtor makes an assignment for the benefit
of his creditors, the assignee can not maintain an action against an
attaching creditor and the sheriff for injury to the business credit
and reputation of his assignor as a result of the alleged malicious
levy of a writ of attachment prior to the assignment. *Slauson v.
Schwabacher*, 4 Wash. [St.], 783.

A right to recover damages for a personal tort—false imprison-
ment—is a mere personal right and is not assignable, even after
verdict and before judgment. *Hunt v. Conrad*, 47 Minn., 557.

A cause of action for fees collected in favor of a de-jure officer
against a de-facto officer who wrongfully holds over, is assignable.
*Platt v. Stout*, 14 Abb. Pr., o. s., 178.

*Unearned Fees and Salaries of Public Officers, Are Not Assignable; and
This, by the Great Weight of Authority, in the Absence of Any Statute.*—
The public service is protected by protecting those engaged in per-

forming public duties, and this, not on the ground of their private interest, but upon that of the necessity of securing the efficiency of the public service, by seeing to it that the funds for its maintenance should be received by those who perform the work, at such periods as the law has appointed for their payment. The particular cases presented were of the assignment of a month's salary in advance; and the claims were sold at ten per cent. discount. This being a sale and not a loan, presented no question of usury, but was held void as against public policy. Opinion by Johnson, J., concurred in by all the judges, including Sanford E. Church and Charles J. Folger. *Bliss v. Lawrence*, 58 N. Y., 442; *Schloss v. Hewlett*, 81 Ala., 266; *Bangs v. Dunn*, 66 Cal., 72; *Ellis v. State*, 4 Ind., 1; *Holt v. Thurman*, 63 S. W. Rep. [Ky., 1901], 280. *Contra: State v. Hastings,** 15 Wis.; *75: *Brackett v. Blake*, 7 Met. [Mass.], 335; *Mulhall v. Quinn*, 1 Gray [Mass.], 105; *Macomber v. Doane*, 2 Allen [Mass.], 541. Assignment held good as to unearned salary of school-teacher. *Johnson v. Pace,†* 78 Ill., 143. The assignment of unearned official salaries, is forbidden by federal statute and in England. Some American courts who have cited English cases do not appear to have been advised of the latter fact. —W. F. B.

---

* By a divided court.

† This case arose under an attempt to garnishee the wages of a school-teacher. The teacher had given an order for unearned salary to a preferred creditor; the board of directors accepted the order on condition of the completion of the contract. Another creditor brought the garnishment proceeding. Assignment held valid. —W. F. B.